LOUIS LUTTRELL v. THE STATE.

No. 1706. Decided June 7, 1899.

1. **Statement of Facts—How to Be Prepared.**

In preparing a statement of facts, it is not necessary to embody every word and sentence each witness may have uttered. All that is required is a proper presentation of the salient features of the case, and where several witnesses agree upon a given point, the testimony of but one should be given, accompanied by the statement as to the testimony of the others, that in the specific particular they agreed with said witness. If a fact is not traversed or is conceded, it should be so stated, and immaterial matters not important to be considered in connection with bills of exceptions or the charge of the court might well be omitted entirely.

**2.   Previous Change of Venue for Prejudice Not Res Adjudicata, When.**

A previous change of venue was procured by defendant on account of prejudice against him in the county. In the county to which the venue was changed, the prosecution was dismissed. Three years later a new indictment was found in the original county. Held, upon motion to change the venue in this second case for prejudice, that the ruling of the court in the first case upon this ground was not res adjudicata as to the then existence of prejudice in the county.

**3.   Agreement as to Continuance in Connection with Change of Venue— Estoppel.**

An agreement of parties, that if the court would grant defendant a continuance at the present term he would not move for a change of venue at a subsequent term, can not operate as an estoppel to prevent defendant from making such motion at the subsequent term.

**4.   Continuance—Diligence.**

It is proper for the trial court to refuse a continuance where the application discloses a clear lack of diligence by defendant.

**5.   Evidence—Hearsay.**

What others may have told a witness as to matters connected with the offense is clearly hearsay and inadmissible.

**6.   Same—Relevance.**

The admission of evidence should be refused where its relevancy is not shown.

**7.   Evidence as to Bribery of Witness by Attorney.**

Evidence that defendant's attorney attempted to bribe an important witness against him to leave the country is inadmissible where there is no testimony tending to connect defendant with such attempted bribery, nor that he had authorized the act of his attorney. Such authority by defendant will not be presumed. Where defendant's connection with, or authority for such attempted bribery, is not shown, evidence as to it is necessarily damaging and injurious to the defendant on trial.

**8.   Impeachment of a Witness—Supporting Evidence as to His Reputation for Truth.**

When a witness has been attacked as to credibility by proof that he has been in jail, or been charged with criminal offenses, it is competent for the party introducing him to sustain him by evidence supporting his general reputation for truth and veracity in the community in which he lives.

**9.   Witness—Refreshing Memory.**

It is competent to permit a witness to refresh his memory by testimony taken down by him in the grand jury room.

**10.   Impeachment of Defendant as a Witness—Predicate.**

It is not necessary to lay a predicate for the impeachment of a defendant when a witness where the evidence is admissible as original evidence against him.

**11.   Evidence as to a Witness' Arrest.**

Where no connection whatever is shown between a witness' arrest and any issue in the case it is not permissible to prove by the witness that a city marshal, a friend of defendant, had arrested him on the previous day.

APPEAL from the District Court of Hunt. Tried below before Hon. HOWARD TEMPLETON.

Appeal from a conviction of murder in the first degree; penalty, a life term imprisonment in the penitentiary.

The indictment charged appellant with the murder of Ed. Doggett, on the 15th day of September, 1893, by shooting him with a pistol.

Ed. Doggett, the deceased, was a young blacksmith about 20 years old, who lived in a little cabin on Stonewall Street, in the city of Greenville. The officers had kept an eye on him for some time on account of suspicions that had connected him with certain offenses that they

were investigating. And one witness testified to hearing defendant, a short time before, order him to leave the town. On the night of the killing he had been to an exhibition or show with some companions, and was killed, as he was returning from the show, about 11 o'clock p. m., and just a few minutes after he had separated from his companions. The killing occurred at Goolby's lumber yard, on Stonewall Street.

At the time of the killing, the defendant, Louis Luttrell, and one Joe English, who was also afterwards indicted for the murder, were both policemen of the city. They were at the show and sat close by deceased and his companions during the performance.

S. J. Melton testified for the State, and to the effect, that he witnessed the shooting, and that Louis Luttrell, this defendant, and Joe English were the parties who did it. He testified that he had gone into the lumber yard, back a little distance from the street, to attend to a call of nature, and just as he was buttoning up his pants, deceased, whom he did not know, came passing down the street; almost at the same moment he saw defendant, Luttrell, meet the boy, and saw Joe English coming from across the street toward the parties. Defendant walked up to deceased, and said, "God damn you, you gave it away." Deceased said, "No." Defendant then was standing very close to deceased and shot him. Defendant fired two shots, maybe three. Deceased fell at the third shot, and English walked up and fired at him after he fell.

The motive for the killing, according to the theory of the State, was that deceased knew something of an attempt which had been made by defendant and John English, a short time before, to rob one of the city banks, and that his knowledge of facts connected therewith would lead to their identity as the guilty parties.

The above is an exceedingly brief summary of the important facts,—the statement of facts covering over 200 pages of the record.

At the January term, 1894, of the District Court of Hunt County, the grand jury returned an indictment against defendant, charging him with the murder of Ed Doggett, and the District Court of Hunt County changed the venue of the prosecution and transferred the case to Collin County, because it was proven that this defendant could not get a fair and unprejudiced trial in the county of Hunt. The case was repeatedly continued in the courts of Collin County, and was finally dismissed for want of sufficient testimony to convict.

On the 30th day of January, 1897, a new indictment was found by the grand jury of Hunt County, charging appellant a second time with the murder. He made an application for change of venue in this second case, based upon both the statutory grounds of prejudice and a combination of influential persons. This application for change of venue was overruled.

*R. L. Porter, S. D. Stinson, W. C. Jones, John Wynne,* and *Tom C. Thornton,* for appellant.—This case having been once transferred, by

change of venue for cause, from Hunt County to Collin County, defendant contends that the District Court of Hunt County had no jurisdiction to try him, and that the case properly belongs to the District Court of Collin County, and that his motion to transfer it to said court should have prevailed. The defendant did not seek to mandamus the District Court of Hunt County and compel said court to transfer the case to Collin County, for the reason that it is not believed that mandamus is the proper remedy. It has been said, "When after the change the indictment is quashed, and the defendant is rearrested under a new indictment, a statutory application, and not a mandamus, is the proper proceeding to have the indictment certified to the second court." State v. Normile, 108 Mo., 121. The question of defendant's right to have his case tried in Collin County, it having been sent there by the solemn judgment of the District Court of Hunt County, and never transferred, becomes in the nature of res judicata, and the District Court of Hunt County has no more right to deprive him of the benefits of the transfer than it would have to refuse him bail under the same circumstances. Where one has been indicted for a capital offense and a judgment of the district or appellate court has declared him entitled to bail, the State will not be allowed to deprive him of this right by dismissing the indictment, then reindict him and declare that he shall not have bail, and this court has said: "Where it appeared on habeas corpus that the accused had been indicted for murder and admitted to bail, and that the indictment had been subsequently dismissed and a new one for the same crime afterwards presented, under which accused was arrested and denied bail, held, error. A person charged with a capital offense, having been once admitted to bail after the indictment was found, whether the bail be granted on the facts or on account of ill health, can not again be placed and held in custody for the same offense under a new indictment without the right to bail. When bail has once been granted after indictment found, it is beyond the power of the State to rearrest for that offense under a new indictment and refuse bail, the right to bail being res adjudicata. See Augustine's Case, 33 Texas Crim. App., 1."

The court erred in permitting the witness Jack Williams, on his redirect examination by the State, to testify over the defendant's objection to what transpired between witness and P. C. Arnold.

The record discloses that P. C. Arnold was an attorney at law, and that he was interested in the codefendant of appellant, Joe English, and it appears that he had some conversation with the witness Jack Williams looking to the refusal or failure of Williams to testify against his client. That is (as contended by Arnold), the witness Jack Williams approached Arnold in the absence of this appellant, and also in the absence of Joe English, and proposed to him, that for a consideration he, Williams, would disappear and not testify in either the English case nor the case against this appellant. Defendant objected and excepted to this testimony, and saved his bill.

It is a clear proposition of law, that if one employs another for a

perfectly legal purpose, and that other does an illegal act, that act,—the illegal act,—can not affect nor be charged to the principal. A State's witness was permitted to testify that after the commission of the offense, and in the absence of the accused, certain persons came to witness and made overtures for compromise, inquiring how much money it would take, etc. There was no proof that these overtures were made by the authority or with the knowledge of the accused. Held, that the evidence was hearsay and inadmissible, and was calculated to prejudice accused. Barbee's Case, 4 S. W. Rep., 584; Montgomery v. State, 5 S. W. Rep., 165; Wicks v. State, 13 S. W. Rep., 748; Gentry v. State, 6 S. W. Rep,. 321.

After the State had put on the main case, and after the defendant had put on his defense, and after the defendant had himself testified, the State introduced the witness McGinnis, who swore that defendant had approached him and desired him to become a witness in his behalf; that defendant had said to him that he, defendant, would be willing to swear to a lie for a man in this kind of a case, and that he, McGinnis, asked defendant what he wanted him to swear, and that defendant had said that he wanted him to swear that he was in town the night Doggett was killed and that he saw two negroes kill him. The defendant excepted to all this testimony, first, because this was a new matter and not in rebuttal of anything brought out by defendant; second, because no predicate had been laid to introduce it as impeaching matter; and third, because it was not offered until after defendant had testified, and he therefore had no opportunity to dispute it.

In order to introduce this as impeaching matter, the State should first have laid the proper predicate by interrogating the defendant in regard to the matter, and the State should not have been allowed to introduce the new matter without giving defendant an opportunity to rebut it.

*W. W. Walling* and *Mann Trice*, Assistant Attorney-General, for the State.—There is nothing in appellant's bill of exceptions and assignment of error to the court's refusal to change the venue, as shown by his first proposition. It is the settled law of this State that the granting or refusing of a change of venue is within the discretion of the trial court, and will not be revised, unless the discretion has been abused; and it must clearly appear that this discretion has been abused to the prejudice of appellant. Bohannon v State, 14 Texas Crim. App., 271; O'Neal v. State, Id., 582; Martin v. State, 21 Texas Crim. App., 1, and authorities cited.

There is still less in the novel proposition advanced by counsel in his second proposition, that this cause, having been once transferred to Collin County, then after the dismissal of said cause in Collin County, the District Court of Hunt County, upon the finding of a new indictment must, ex rei necessitate, forthwith transfer the cause to the county of Collin for trial; thereby leaving no discretion whatever in the district

judge of Hunt County to change the venue to any county he saw fit.. Bohannon's Case, supra.

The second case in Hunt County was to all intents and purposes,. except that it would be res adjudicata as to the right of appellant to· bail and to the plea of former jeopardy, and autrefois convict and. autrefois acquit, an entirely new case. For all other purposes it is to be· tried as if the former case had never existed. There must be in the trial court a new number to the case, new service, new special venire ordered.. Everything new, without reference to the former cause. There is· nothing in the Augustine Case contra.

HENDERSON, JUDGE.—Appellant was convicted of murder in the· first degree, and his punishment assessed at confinement in the peniten- tiary for life, and he appeals.

The case was filed in the Dallas branch of this court on October 1,. 1897, and was submitted on the 20th of April, 1898, at the Austin term. The record is written with a pen, and contains 436 pages; 215 pages thereof being the statement of facts. This record should have been condensed into not exceeding 200 pages; 50 pages of which would have been sufficient for the statement of facts, showing every essential feat- ure of the case to be passed on by this court. We consider it a just sub- ject of criticism that this court has, by this method of practice, been compelled to go through much unnecessary matter, consuming time that should have been devoted to other subjects. It serves but very little purpose in making a statement of facts to embody every word and sen- tence each witness may have uttered on the stand. All that we desire is a proper presentation in the statement of facts of the salient features. of the case; and where witnesses agree on any given point, it would be a very easy matter to state what one witness testified on the question, and then state that others, naming them, agree with such witness. If a fact is not traversed, or is conceded, such should be stated; and where witnesses testify on immaterial points, not important to be con- sidered in any bill of exceptions or charge of the court, such might be well omitted. Of course, this does not apply to cases in which it is. insisted that the evidence does not support the verdict. In all such cases the record should be full. We make these remarks because the record is unnecessarily large and unwieldy. But these observations apply equally in many cases that come to this court, and we may be compelled in self-defense, when such records come up, to adopt a rule requiring the parties to restate and condense the record.

On a night in September, 1893, one Ed Doggett (a young blacksmith, about 20 years of age), on his way from the business part of the city of Greenville to his home, a short distance from the public square, was shot and killed on one of the public streets of said city, the slayers evi- dently being concealed in a lumber yard fronting on Stonewall Street. At the January term, 1894, the grand jury of Hunt County returned an

indictment against defendant and one John English for the murder. The venue in the case was subsequently changed to Collin County on the ground of the existence of prejudice against appellant in Hunt County. The case pended there for several terms of court, and was eventually dismissed on the part of the State, because of its inability to procure testimony to secure the conviction of appellant. Subsequent to this the State discovered other testimony, and the parties were again indicted in Hunt County on January 30, 1897. At the following July term the case was called for trial. A trial was had, which resulted in the conviction of appellant. On the trial the State offered the positive testimony of an eyewitness to the homicide, and this evidence was strongly reinforced by circumstances testified to by other witnesses. The motive assigned by the State for the homicide was to the effect that appellant and John English, a short time prior to the killing, attempted to rob the First National Bank of Greenville, and that deceased was either cognizant of same, or had knowledge of some fact in connection therewith that would lead to the identity of Luttrell and English as the guilty parties; and that on said account appellant and his codefendant conspired together, and in pursuance thereof shot and killed deceased. Defendant entered a plea of not guilty, and relied on the weakness of the State's case, and also on the plea of alibi. On the trial, appellant filed a motion to change the venue of the case on the ground of prejudice against him, and on the ground that there was a secret formidable combination against him; and in this connection he also insisted that, the court having formerly changed the venue on a previous indictment to Collin County, the question of a change of venue was res adjudicata, and that it was the duty of the court to recognize this, and change the venue of the case. With reference to the latter proposition we have this to say: That the former change of venue, made in 1894, of an indictment and case then pending against appellant in Hunt County, on the ground of prejudice then existing against him, could not be an adjudication of the question on the new indictment for the same transaction (the old one having been dismissed), presented in the District Court of Hunt County in 1897, three years later. It was a new indictment, presented long subsequent to the change in the former case, and under new conditions. The court in such case might take cognizance of the former change, and it might afford some evidence of the existence of prejudice formerly; but it could not be considered res adjudicata as to the then existence of prejudice in Hunt County. The court did not err in overruling the application on this ground. The State controverted the appellant's motion for a change of venue on the ground of prejudice and formidable combination, and in connection therewith the court explained that the parties at a former term of the court (defendant being present) had agreed that the court would authorize a continuance of the cause at that term if they would not make a motion for a change of venue at the succeeding term of the court. This was claimed to be an estoppel on the appellant, but we can not so consider it. On the motion the court heard

40th Crim. Reps.—42

testimony pro and con, and we are not prepared to say that the court abused its discretion in refusing to change the venue.

Appellant made a motion for the continuance of said cause. Clearly appellant was lacking in diligence, and on this ground the court was justitfied in overruling the motion.

Appellant objected to the testimony of the witness Jack Williams to the effect that Neal Fitts sent for him one night to help catch a horse out on the prairie, and that Will Fitts and a negro told him that a couple of men had ridden up to the lot, and put guns in their faces, and asked where he (witness) was. This testimony was hearsay, and its relevancy was not shown. We do not think it was admissible. The State was permitted to show by Jack Williams (who was an important witness in matters pertinent to the homicide and the connection of appellant therewith) that P. C. Arnold, an attorney for defendant, attempted to bribe him (witness) to leave the country. Defendant objected to this testimony—First, because it was hearsay; and, second, because it was calculated to unduly prejudice the action of the jury against defendant. These objections were overruled, and the court, in approving the bill, states that it was shown that Arnold was at the time Luttrell's attorney, and was acting as such in the transaction. If appellant was shown to have been connected with or had authorized the action of Arnold, said testimony would not only have been admissible, but would have been very damaging to appellant. But aside from the fact that he was the attorney of appellant, there is absolutely no testimony tending to show that he was authorized by appellant to bribe, or offer to bribe, said witness to leave; and we apprehend that it will not be seriously contended that authority to bribe a witness comes within the scope of an attorney's employment to assist in the defense of the case. In the absence of some testimony or statement in the bill of exceptions showing some authority on the part of defendant's counsel to bribe a witness, it can not be presumed that such authority was given. However beneficial the absence of a witness may be to a defendant in any given case, in the absence of some proof of authority, any attempt on the part of counsel to get ride of a witness must be attributed as of his own motion; yet it can not be gainsaid that such testimony coming before a jury must necessarily be fraught with injury to appellant on trial. In the absence of proof of authority, the jury would nevertheless be apt to believe that the lawyer did not act on his own responsibility, but that there must have been some suggestion from the defendant, and so, without proof, visit upon defendant the sin of his counsel. This is not a new question in this court, but it has always been held that, before testimony of this character is admissible in any case, there must be proof of some connection or of some authority conferred by defendant; otherwise, the testimony as to such defendant is purely hearsay. Favors v. State, 20 Texas Crim. App., 156; Barbee v. State, 23 Texas Crim. App., 199; Nalley v. State, 28 Texas Crim. App., 387. The State introduced evidence to show that the State's witness Melton had a good reputation for truth in the community in which he lived. This was objected to by defendant on

the ground that no attempt had been made by defendant to impeach said witness. The court, however, certifies that said testimony was offered after defendant had tried to impeach Melton, not only by contradicting. his evidence, but by introducing in evidence proof that he had been charged to be, and was in fact, guilty of theft, etc. It seems permissible to sustain a witness who has been assaulted by proof showing that he has been in jail, or been charged with other criminal offenses, by evidence supporting the general reputation for truth of such witness. Farmer v. State, 35 Texas Crim. Rep., 270; Whart. on Ev., sec. 491. There was no error in the action of the court permitting the witness Barker to refresh his recollection by the testimony taken down by him in the grand jury room. There was no error in the court permitting the introduction of the State's witness J. W. McGinnis when admitted, nor permitting his testimony as to conversations with defendant. It was not necessary to lay a predicate, as for the impeachment of defendant as to these matters. It was original evidence against him. We do not believe it was permissible to allow the State to prove by the witness J. W. McGinnis that the city marshal of Greenville, W. R. Velvin, had arrested him on the previous day. No connection whatever is shown between witness' arrest and any issue presented in the case against appellant. But, inasmuch as there was testimony tending to show that Velvin was a friend of defendant, it was calculated to suggest that the arrest of McGinnis, whose testimony was material, and appears to have been recently discovered, was instigated by some animus on the part of Velvin against him because he was a witness against defendant.

In all, twenty-nine bills of exception were reserved, but we have discussed all that we regard as material as involving questions likely to occur on another trial. We would here, however, suggest that a number of bills are taken to the argument of the district attorney. Some of the language attributed to him appears to be outside of the record, and of a character calculated to inflame the minds of the jury unduly. It is suggested, also, in some of the bills, that during the time these remarks were being made the court was off the bench (perhaps in an adjoining room), and separated by the crowd from the jury and counsel. The court, however, does not appear to agree to this latter suggestion. Of course, we take it that in the proper administration of law the judge ought to be and is present during the entire trial. As to the remarks of counsel, we are not prepared to say that we would reverse the case on that ground. As stated, however, some of the remarks were of an intemperate character, and should have been promptly restrained by the court. On another trial we take it that such conduct will be avoided. On account of the admission by the court of the illegal testimony before discussed, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*