## Burton Franks v. The State.

No. 20670. Delivered February 14, 1940.
Rehearing Denied April 3, 1940.
Appellant's Request for Leave to File Second Motion for Rehearing Denied
(Without Written Opinion) April 10, 1940.

44

The opinion states the case.

*John M. Hatter* and *L. D. Johnston,* both of Waxahachie, for appellant.

*Forrester Hancock,* Crim. Dist. Atty., of Waxahachie, *Frank B. Tirey,* of Waco, *Henry Tirey,* of Dallas, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the murder of Willis Wilemon, and by the jury convicted and assessed the death penalty.

It appears from the testimony that appellant, who lived at Bonham, Texas, visited the town of Maypearl, in Ellis County, on Monday, May 8, 1939, and the following Tuesday and Wednesday, with the purpose of familiarizing himself with the localities and surroundings, eventually looking towards robbing the Maypearl bank. He was identified by numerous witnesses on these trips, and the stolen car in which he was riding was also identified by witnesses. On Wednesday, May 10th, he was

in Maypearl prior to the noon hour, and again came under the observation of various persons who identified him. At about 12:10 o'clock, when there was no one in the bank except the deceased, he entered the bank and by means of exhibiting a pistol he obtained some $1,700.00 in money. He then directed the deceased to proceed to the vault, and struck the deceased over the head with some blunt instrument, and then shot him in the back, from the effects of such shot wound the deceased expired that night. Appellant then proceeded from the bank to his mother's home in Bonham, Texas, where he concealed a portion of the stolen money, and upon his arrest in a hotel in Denison, Texas, the following day the sum of $585.00 was found under the pillow of his bed. He was then taken to his mother's home where he directed the officers to dig near a garage thereon and a hidden $1,000.00 was there recovered. He then showed the officers where he had hidden the number plates of the stolen car, which had been changed for other numbers stolen off a car in Oklahoma.

Appellant's defense was insanity, which was testified to by his mother and sister, and an accidental killing, which was testified to by himself. The jury refused each of such defenses and assessed the extreme penalty. The testimony is short. The transcript, however, contains twenty-five bills of exceptions, evidencing the energy, industry and learning of his attorneys.

Appellant's bill No. 1 complains of the court's refusal to grant a continuance of this cause in order to enable him to procure the attendance of one Andrew Franks, who was alleged to be secreting himself, the proof expected to be gotten from the witness being that he would testify that appellant's uncle, Ed Franks, was the one who had planned this bank robbery, and was the master mind therein, directing this appellant in planning and carrying out this scheme. By the court's quali- fication to such bill it was shown that this witness was a fugitive from justice in two different states, and that he had been such for several months, and his whereabouts was unknown. We see no error reflected herein. There is naught shown, save appellant's statement, that Ed Franks had anything to do with this offense, either in its planning or execution. Ed Franks' participation therein would not have affected appellant's guilt or innocence, if appellant's testimony was true. This bill is overruled.

Bill of exceptions No. 2 is based upon the court's refusal to grant appellant's motion for a change of venue. It is to be noted that such motion is signed by appellant's two attorneys

of record alone as compurgators. The trial court, however, ignored any defect therein and heard evidence relative to the motion. After such hearing the court overruled the motion, to which ruling this exception appears. We find a controverting affidavit of the State relative to the change of venue, and we also find testimony brought forward in the record in support of the allegations in the motion for a change of venue, as well as testimony substantiating the State in its contention that a fair trial could be had in Ellis County, with its population of approximately 60,000 and its eight or ten thousand poll tax payers. The major part of the witnesses so heard thought that a fair trial could be had in such county. Under these circumstances the court's ruling on the motion impresses us as having been correct, and there seemed to have been no great difficulty in qualifying a jury herein. This bill is overruled.

Bill of exceptions No. 3 relates to the fact that soon after appellant's indictment on May 11, 1939, this cause was set for trial on May 22, 1939, and a special venire of 200 men ordered drawn for that date. On May 16 following L. D. Johnston and John M. Hatter, attorneys, were appointed by the court to conduct the defense of appellant. That on May 22, 1939, Mrs. Frank Watson, the mother of appellant, filed an affidavit alleging that appellant was insane at the time of the commission of the alleged offense, and was insane at the time of the filing of the affidavit, and praying the court to try the issue of appellant's insanity before a trial upon the merits of the case. Whereupon the court proceeded to try such issue before a jury.

This bill is concerned with a motion for a continuance requested by appellant's attorney for a period of ten days in order that psychiatrists and alienists might be employed by appellant's mother, and that they could have ten days in which to observe appellant and go over his case before they would be able to testify relative to his mental condition. It appears from the trial court's qualification to this bill that one alienist did appear and testified, that there were also other alienist witnesses on the part of the State, and that none of the witnesses save appellant's mother and sister expressed the opinion that appellant was insane. We think it was hardly reasonable to request the court to postpone this case for a period of ten days in order to allow two further alienists to make up their minds relative to appellant's sanity or insanity. We think the request for ten days observation of appellant by these alienists, made on the day set for his trial on the facts, was unreasonable. This case had been set on May 13th for May 22nd, and appel-

lant was so notified, but on account of these other matters the trial on the merits of the case was not entered into until May 29, 1939, and we think that this request for a ten day extension of time for observing appellant came too late. This bill is overruled.

Bill of exceptions No. 5 complains because of the court's failure to fill out the original panel of 200 men, appellant demanding the immediate filling of such panel by personal service. It seems that the court had, prior to the calling of such case, ordered a special venire of 200 men to appear for this trial. Upon the filing of the affidavit in lunacy by appellant's mother on the day set for this trial, when all excuses had been heard and acted upon, there remained but 112 men. After the lunacy jury had been selected from the original panel, which was not objected to by appellant, and returned their verdict, there remained 49 members of such venire, and the court directed the trial to proceed on the merits, and this jury panel to be first exhausted before any talesmen should be brought in by the sheriff. It seems that upon an exhaustion of the remaining jurors, the sheriff or his deputies personally served all talesmen and 151 such men were brought in, from which number, together with the remaining 49 jurors, the jury was selected. Under Art. 596, C. C. P., the court was correct in his action herein. This bill is overruled.

Bill of exceptions No. 6 seems to be a complaint based upon a colloquy between the court and counsel, and not in the presence of the jury, prior to the examination of any juror, and we do not think any error is evidenced therein.

Bill of exceptions No. 7 is also an exception taken to the remarks of the court, which the qualification of the court says did not happen. It does not present any error, so we think.

Bill of exceptions No. 8 relates to the fact that it is claimed that certain members of the jury that sat on this case had not paid their poll tax; but we observe that there was no proof offered thereof. Since the passage of Art. 579, C. C. P.: "Failure to pay poll tax shall not disqualify any person from jury service." Also see King v. State, 100 S. W. Rep. 387.

Bill of exceptions No. 9 relates to the court's action in overruling of a challenge for cause of a certain juror, in which we see no error. In this bill and Bill No. 10 it seems that the juror had no knowledge of the facts, had talked to no witness, but only had the knowledge possessed by most citizens that such

an offense had been committed, and both jurors testified that they had no opinion that would influence their verdict. The same facts are also applicable to bills of exceptions Nos. 11, 12, 13 and 14. We note that all of said objectionable jurors had formed an opinion from rumor and hearsay only,—none of them knowing anything relative to the facts, nor having talked with any fact witness. Their opinions were based upon newspaper accounts or hearsay. They all said they could lay aside these thus formed opinions and try this case entirely upon the law and the evidence.

Jurors testifying that they can give a fair trial are competent, though they have formed an opinion based on hearsay or rumor. Adams v. State, 35 Texas Crim. Rep. 285, 33 S. W. Rep. 354; Suit v. State, 30 Texas Crim. Rep. 319, 17 S. W. Rep. 458; Trotter v. State, 37 Texas Crim. Rep. 469, 36 S. W. Rep. 278; Green v. State, 117 Texas Crim. Rep. 499, 35 S. W. (2d) 419; Hassell v. State, 107 Texas Crim. Rep. 541, 298 S. W. Rep. 293, and many other cases of like import.

Bill of exceptions No. 15 relates to the testimony of Charlie Smith, who seems to be one of the first persons who arrived at the side of the deceased after he had been shot. At the time of the witness' arrival at the bank, just after the hold-up, the deceased was unconscious, but immediately upon gaining consciousness the deceased related the circumstances surrounding the transaction, the testimony complained of being as follows: "I knew Willis Wilemon. He is dead. Just after the hold-up I went to the bank. Willie Wilemon was lying down in the vault. Lewis Brigman was holding his head. He was unconscious. I went and got a steel cot and we laid him on it. We put the cot in the bank. Willis Wilemon began talking in two or three minutes after I got to him. He regained consciousness in the vault. The first thing that he said that I remember was, 'I don't see why he shot me. I gave him everything he asked for.' He said, 'He carried me around by the cashier's stand and got the money.' I am not positive what he said in the vault. He said what I have just detailed after we got him out of the vault. He said, 'He was marching me into the vault,' and he said 'he hit me.' And he said, 'He didn't knock me out. I was getting to my feet, and he shot me.' He was shot in the left side slightly left of the spine about the waist line. His wife came in and he said, 'Lila, watch my insurance.' He said, 'I have got them paid up to the 20th.' He was suffering with his legs and could not move them. I cut his shirt off of him. * * * I went to the bank and went in and then went and got a cot and went back and we

got him out of the bank vault and that is when I heard the statements."

This is a typical case of res gestae, the thing speaking rather than the witness. There was no time for fabrication; no time for deceased to form any deliberate design, but immediately upon regaining consciousness the thing, or transaction itself, was made known by the words out of the mouth of the dying man. The authorities are numerous, and we cite only a few. See Outlaw v. State, 69 S. W. (2d) 120, 18 Tex. Jur., p. 299, and authorities there cited.

Bill of exceptions No. 16 also relates to the testimony of Lewis Brigman, who testified that he ran a store next door to the bank; that he heard Mr. Wilemon was shot; that he ran into the bank and found Mr. Wilemon unconscious lying down in the vault. He raised his head and put it into witness' lap; the deceased "came to" and said "Take my tie off." He said he was knocked in the head, and he said "and when he saw he didn't knock me out, he shot me, and I don't know why. I was doing all I could," the last portion in quotation marks being the portion complained of in the bill. This was clearly res gestae and properly admitted.

Bill of exceptions No. 17 relates to the testimony of the widow of the deceased wherein she testified that she and the deceased were married and had two sons; that her husband was president of the bank at Maypearl; that she saw him lying in the vault. He said he had been hit in the back of the head, and then shot in the back. "I noticed blood on his head. He said the man was about twenty-two or twenty-three years old."

The appellant asked the witness no questions, and made no objection to any portion of her testimony during its recital, but after the witness had been excused, without cross-examination, appellant's attorney requested the court to strike such testimony from the record, and the court did thereupon instruct the jury to not consider any portion of such testimony except the statement: "I noticed blood on his head." If appellant had not desired such testimony to have been given he should have made a timely objection. If its admission was due to his inaction and failure to object at the proper time, and some improper testimony was allowed to go before the jury, his complaint comes too late. Upon the court's attention being called thereto, he did all that should have been expected of him by withdrawing same from the jury's consideration. We see no error reflected herein.

Bill of exceptions No. 18 is based on the admission of the testimony of Lewis Winchester, a peace officer from Denison, who testified as follows: "I found the defendant Burton Franks asleep in bed. In his pillow case under his head we found $558.00. I removed from his person a .380 automatic pistol magazine. In the afternoon of the same day in the city jail we took five steel hacksaws blades from the lining of the shirt which the defendant was wearing. They were in a hand-made leather case."

This testimony was objected to on the grounds that appellant was under arrest at such time, as well as that same was immaterial, irrelevant and highly prejudicial. The trial court's qualification shows that at the time of the admission of the testimony the appellant had not taken the witness stand, and such testimony was admitted as a circumstance to show his guilt of the crime charged. The deceased was shot with a .380 pistol, and about $1,700.00 in money was taken from the bank in the robbery. Afterwards, however, appellant did take the stand and testified to practically the things objected to herein. We think the officer thus arresting appellant had the right to search him, and we see no good reason for not introducing these criminating matters before the jury. It was later shown by appellant that this pistol magazine came out of the pistol that did the killing, and that this money was a portion of the stolen money; that appellant took the officer to where he had secreted the remaining portion of the money, and told them where he had thrown the pistol in the Red River. We think no error is here shown. See Reynolds v. State, 293 S. W.. Rep. 178; 18 Tex. Jur., p. 413; Merriman v. State, 20 S. W. (2d) 1051; Silva v. State, 278 S. W. Rep. 217. As to the admission of the possession of the saws in evidence, see 18 Corpus Juris, p. 554; also State v. Duncan (Mo.) 22 S. W. Rep. 699, From the last case we quote, p. 704: "In State vs. Jackson, 95 Mo. 623, 8 S. W. 749, it was ruled that evidence was admissible to show that a prisoner had requested another to secure tools so that he might effect his escape, and by parity of reasoning evidence was competent to show that defendant had saws on his person in jail, with intent to make his escape in case of a conviction."

Bill of exceptions No. 19 complains of the testimony of a State's witness who testified that appellant, after his arrest, directed the officers to the spot where he had buried the remaining money taken from the bank at the time of the robbery and killing, the money being buried on the home lot of appel-

lant's mother. Such testimony seems to be sanctioned by the statute, Art. 727, C. C. P., the only objection thereto, certified to by the court, being that appellant was under arrest at such time.

Bill of exceptions No. 20 complains of the trial court's refusal to allow appellant to testify, in substance, that he robbed this bank on account of the influence of his uncle Ed Franks over him. This bill as qualified shows that appellant did testify that he had planned this robbery with his uncle Ed Franks, and substantially this same testimony finally was given by him before the jury. That there was no claimed duress of any kind, and that the uncle was not ever present with appellant in Ellis County, neither at the two trips previous to the day of the crime nor on the day of the killing. That appellant's uncle may have been his tutor in crime may have been true, and yet have been no justification nor excuse for this crime. Most persons committing crimes doubtless learned the rudiments thereof at least from the experience and advice of others, nevertheless such tutelage should have no effect on the crime committed. We do not think such testimony was relevant, Mr. Branch says in his Penal Code, Sec. 97, p. 62:

"Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less probable. McGuire v. State, 10 Texas Crim. App. 127; Lane v. State, 164 S. W. 280.

"No circumstance is relevant which does not make more or less probable the proposition at issue. McGuire v. State, 10 Texas Crim. App. 127; Luttrell v. State, 40 Texas Crim. Rep. 651; 51 S. W. 930."

This bill is overruled.

Bill of exceptions No. 21 complains of the court's action in refusing to re-open this cause after both sides had closed with their evidence and allow the appellant to introduce before the jury testimony showing the suicidal death of his uncle Ed Franks, as well as to introduce the complaint against Ed Franks for the same killing as this appellant was then being tried. This matter was offered merely in an effort to obtain some mitigation of punishment before the jury and not as a defense herein as stated by appellant's attorneys. It is to be noted that finally this case did not rest on circumstantial evi-

dence. The appellant went on the stand and admitted the robbery and the killing, and we are familiar with no doctrine that would allow such testimony as a mitigation for such an offense. 18 Tex. Jur., p. 129, Sec. 63, says: "The declarations of a third person confessing or tending to show his guilt of the crime with which the defendant is charged are hearsay and ordinarily inadmissible unless the case is one in which the State is relying solely upon circumstantial evidence, and also where the guilt of the accused and the facts show that he was so situated that the crime might have been committed by him." Also see Wise v. State, 101 Texas Crim. Rep. 58, 273 S. W. Rep. 580, from which case the above text was taken; Baker v. State, 119 Texas Crim. Rep. 161, 46 S. W. (2d) 680.

If Ed Franks' confession, were he living, that he had committed this offense, would have been inadmissible, we fail to see any reason why his suicidal death, which might be treated as an inferential confession, would become admissible. This bill is overruled.

Bill of exceptions No. 22 relates to some kind of testimony given by Mr. Pigg claimed to have been newly discovered, which testimony was not set forth in the bill but reference is made to the motion for a new trial and an affidavit attached thereto. Because of the extreme penalty exacted herein we have gone to the motion for a new trial and do not find any misconduct of the jury shown therein. The court further qualifies this bill by the statement that the matters contained in the affidavit of Mr. Pigg were denied under oath by each of the two jurors mentioned therein. Mr. Pigg's affidavit related to statements made to him by two of the jurors on the next day after the case had been concluded. Each juror denied making such statement, so the bill shows, and we see no error in the trial court disbelieving such affidavit.

We overrule the contention set forth in bill No. 23 without further discussion.

Bill of exceptions No. 24 relates to a complaint of the court's charge in that he charged the burden of proof relative to the insanity of the appellant to be upon the appellant, and did not explain that the burden of proof did not mean beyond a reasonable doubt.

The charge given by the court has been upheld in many cases as correctly presenting the law relative to insanity as a defense for crime, and beginning with the early decisions and on through

the later ones such has been held sufficient. For a collation thereof see Branch's Penal Code, Sec. 38, p. 20.

Bill of exceptions No. 25 relates to the court's refusal to allow appellant's mother, Mrs. Frank Watson, to testify that prior to appellant's trial, the witness had gone to Dallas to see three specialists relative to obtaining their testimony as to appellant's mental condition, and that they informed her that they would require ten days time in which to observe and examine appellant before they could give any opinion on his sanity.

This testimony was objected to as immaterial, hearsay and prejudicial. We think the same reasoning applies hereto as was set forth in treating bill No. 3. According to the record, it is shown that there were eleven days elapsed in which these specialists could have examined and observed appellant before he was actually tried on the facts. We can see no relevancy to the proffered testimony.

The facts herein show a wanton killing perpetrated in a robbery, and the record impresses us as exhibiting a fair trial therefor. That the jury has demanded of appellant the extreme penalty is a matter left within their discretion. The appellant was ably represented by attorneys appointed by the court, who are to be commended for their diligence and industry. In the matters presented to us we have carefully reviewed the record, the facts and the bills of exceptions, and see no error reflected therein, and have no alternative other than to allow the law to take its course.

The judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for a rehearing the appellant relies upon and reasserts the same grounds for a rehearing that he urged for a reversal of his case on original submission. We have again very carefully examined every legal proposition advanced by him, and while it appears that he made a strong showing for a change of venue, the issue was contested and we do not feel that we would be justified under the evidence as disclosed by the record in holding that the trial court abused his discretion in overruling the same.

Upon mature and careful consideration of all matters asserted by appellant, we remain of the opinion that the cause was properly disposed of on original submission. Consequently

54

we see no good reason for again entering upon an extended discussion thereof.

The motion for a rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.