OSCAR WRIGHT V. THE STATE.

No. 21698. Delivered October 29, 1941.
State's Motion for Rehearing Granted January 28, 1942.
Appellant's Motion for Rehearing Denied February 25, 1942.

448

*C. Land,* of Memphis, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for the offense of murder. The punishment assessed is confinement in the State penitentiary for a term of seven years.

The testimony adduced upon the trial, briefly stated, shows that appellant was employed at a C. C. C. Camp but lived with his wife and a sixteen-year-old daughter in the town of Memphis, Texas, while his son was in the U. S. Army stationed at some place in Wyoming. John Gonzales, the deceased, was at the time employed as a waiter and cook at the camp, as were other Mexicans. Appellant and deceased became friends and at times the deceased and two other Mexicans would go to appellant's home with some musical instruments and furnish the family a little entertainment. At other times the deceased would cook some chili for appellant and his family, and at such times would eat his meals there. Sometime in the early part of the month of July, appellant's son came home for a visit of several days, at the conclusion of which appellant accompanied him back to Wyoming and was absent from home for about ten days. During this time the deceased would come to appellant's home and spend the night with appellant's wife. Thereafter, on Thursday, August 10th, when appellant was away from home, his wife and daughter packed their grips and went to Vernon, Texas. The deceased engaged a truck for them and assisted in conveying their grips to the depot. When appellant came home that night, he found his wife and daughter absent. On the following Saturday the deceased left camp and was

gone until Tuesday. According to appellant's evidence, on the night of the killing, he and deceased went to that part of town where negroes lived and purchased some whisky as they had done on two or three preceding nights. They then went to an embankment near the railroad track, sat down and began to roll a cigarette. While they were sitting there, the deceased said to appellant:

"You think that I have been fooling with your wife and family while you were gone to Wyoming. I was down with your wife at Vernon last Saturday and had a good time."

Appellant replied: "It looks like from what I have heard and what you have said, that is true." The deceased then made a move with his hand like he was going for a knife and appellant struck him on the head with a hammer and left the deceased lying there. The next morning after the deceased was found, the officers began an investigation. When they first questioned appellant he denied any connection with the killing of Gonzales but later made a full and complete voluntary confession.

Appellant first complains of the action of the trial court in declining to sustain his motion to quash the indictment based on the ground that the grand jury which returned the indictment in this case was selected by a jury commission composed of five men appointed by the court at the previous February term. This motion was filed after the grand jury was impaneled.

Article 358, C. C. P., reads as follows:

"Before the grand jury has been impaneled, any person may challenge the array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard. Any person confined in jail in the county shall upon his request be brought into court to make such challenge."

Article 361, C. C. P., provides that a challenge to the array shall be made in writing for these causes only:

"1. That those summoned as grand jurors are not in fact those selected by the jury commissioners.

"2. In case of grand jurors summoned by order of the court,

that the officer who summoned them had acted corruptly in summoning any one or more of them."

Consequently, if appellant desired to challenge the array, he should have done so in writing at the time the grand jury was being organized, unless he brought himself within the exception to the rule. See Powell v. State, 269 S. W. 443; Juarez v. State 277 S. W. 1091, and authorities there cited.

Appellant's challenge to the grand juror I. L. Perkins was based on the ground that he was not a qualified voter under the law. Just why this man was not a qualified voter is not shown. If he had not paid his poll tax it would not disqualify him as a juror. See McAllister v. State, 93 S. W. (2d) 745; King v. State, 100 S. W. 387; Franks v. State, 139 Tex. Cr. R. 42. We therefore overrule his contention.

Bills of Exception Nos. 1, 2 and 3 related to the same subject matter and will be treated and disposed of together. By Bill of Exception No. 1 appellant complains because the trial court declined to permit him to prove by his wife that after she had gone to Vernon the deceased came to see her and that during his visit with her she had sexual intercourse with him. By Bill of Exception No. 2 appellant complains because the court declined to permit him to introduce in evidence a letter in affectionate terms which the deceased had written to the wife of appellant after his visit to Vernon and which she claimed was in the handwriting of the deceased. Bill of Exception No. 3 shows that after certain parties had testified to facts which indicated that the deceased was having illicit relations with the wife of appellant and of which he had been informed, he re-offered the letter in evidence, but the court sustained the State's objection thereto on the ground that the same was not pertinent and relevant in that it was not shown that appellant, prior to the homicide, had any knowledge of the letter or its contents. Such testimony would be strong and cogent corroboration of the oral testimony introduced by the appellant's wife and Mr. Childress, a personal friend of the appellant. We, therefore, hold that under the authority of McAnear v. State, 43 Tex. Cr. R. 518, the learned trial judge erred in excluding said letter and the testimony of the wife of appellant as to her illicit relations with the deceased. See Eanes v. State, 10 Tex. Cr. App. 440; Powers v. State, 88 Tex. Cr. R. 457.

For the error herein pointed out, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

GRAVES, Judge.

The State has filed a motion for rehearing, insisting that we erred in reversing this case because of the trial court's refusal to receive in evidence the letter purported to have been written by the deceased to appellant's wife while she was at Vernon.

It is contended that the bills of exception upon this subject fail to reflect that the proper predicate to authorize the introduction of the letter was made, in that there was no evidence that the purported letter was written by, or was in the handwriting of, the deceased, and that, if the proper predicate was shown, the contents of such letter were not of such materiality as to require a reversal of the case.

While there is considerable merit in the State's contention that the bills of exception do not reflect that a proper predicate was first laid to authorize the introduction of the letter in evidence, yet we have decided to dispose of the case upon the question of whether or not the trial court's refusal to admit the letter in evidence constituted reversible error.

In considering this question, attention is called to the former opinion in this case, reported in 140 Tex. Cr. R. 193, 143 S. W. (2d) 949, and to the facts stated therein.

In our original opinion, the trial court's failure to permit the letter to be introduced in evidence was held to be reversible error, primarily upon the authority of McAnear v. State, 67 S. W. 117, 43 Tex. Cr. R. 518. The State insists that such case did not support the conclusion reached. It, therefore, becomes material to analyze the facts of that case in the light of those in the instant case.

In that case, McAnear found an unsigned letter, addressed to his sister, which "indicated, or tended to indicate, undue intimacy on the part of some one with his sister, * * *"

McAnear conceived the idea that it had been written by a married man. From the stationery or letterhead, he concluded

that someone connected with the firm of which deceased was a member had written the letter. A short time after the letter was found, the sister absented herself from home one night, and the next morning McAnear upbraided her for so doing and asked her to tell him who had written the letter found by him, which she refused to do. Thereafter, McAnear, deceased, and McAnear's brother were in the home of deceased, whereupon deceased was told that they believed he was the one who had been writing to their sister and who had stayed with her at night, and that they (McAnear and his brother) wanted to know the truth. Deceased admitted that he was the one; whereupon McAnear killed him. Deceased's admission of his guilt of· the charge was the first positive proof McAnear had of such fact. A letter in deceased's handwriting, addressed to the sister, and one from the sister to deceased, were found on deceased's body. In the trunk of deceased another letter was found. As to the contents of these letters, the opinion states that they showed deceased's conduct to be "nothing short of infamous towards the sister of defendant, and the letter of appellant's sister appears to be equally rehensible; * * * *."

The admissibility of the contents of the letters written by deceased was because "both clearly demonstrate, if true, appellant's motive for the killing."

The opinion reflects that McAnear knew nothing of the letters nor of their contents, prior to the killing; hence, the letters themselves could not have been the basis of a motive for the killing. The motive there referred to was, of necessity, that of "the improper relation of deceased with appellant's sister."

The materiality of the contents of the letters consisted in the fact that they corroborated her testimony to the effect that she and deceased had been intimate, for the opinion says: "Said testimony would be strong and cogent corroboration of the oral testimony adduced by appellant and his sister, * * *."

McAnear was convicted of murder in the second degree, under the law as it then existed. It was also the law, at that time, that insulting conduct towards a female relative was, as a matter of law, adequate cause, reducing a killing to no higher grade of offense than that of manslaughter. The contents of the letters tended to establish as a fact the insulting conduct on the part of the deceased, as well as to corroborate the testi-

mony of the sister upon that issue. The admissibility of the letters in evidence is, therefore, demonstarted.

We now look to the facts of the instant case.

The letter here involved contained nothing showing sexual intimacy between deceased and appellant's wife; it went no further than to address appellant's wife in endearing terms such as "My Dear Sweet Darling." There is evidence sufficient to show that, for some time prior to the killing, appellant knew of deceased's conduct towards his (appellant's) wife, and that, for several days prior thereto, he associated with, and was in company of, deceased, and possessed such knowledge, because he testified: "No, Mrs. Childress didn't tell me anything else, but she said they had intercourse with each other that night, and several nights after that. That was the first time I really knew anything about it."

The fact that deceased and appellant's wife had, for some time prior to the killing, been intimate was not a disputed issue in the case. The wife testified to and admitted such intimacy.

As to what occurred at the time of, and immediately prior to, the killing, we find that appellant did not first mention to deceased relative his conduct with the wife. In fact, it was the deceased who first mentioned it and who practically admitted such fact. Appellant registered no resentment, but, according to his own testimony, killed the deceased in self-defense, after the deceased had made a demonstration as if to draw a knife.

It thus appears that the distinction between this case and the McAnear case, supra, lies chiefly in the fact that, in the McAnear case, the contents of the letter there sought to be introduced related to, and were material upon, a defensive theory. In the instant case, no such materiality exists, but, to the contrary, the contents of the letter here sought to be introduced showed conduct on the part of deceased far less reprehensible than that of which the appellant had actual knowledge prior to the killing, and notwithstanding which he continued to associate with the deceased. In addition to this, the admissions of the wife of acts of intimacy with the deceased were before the jury, undisputed and unchallenged by the State.

In the light of these facts, we are unable to reach the conclusion that the trial court's failure to permit the appellant to show that the deceased had written a letter to his wife, addressing her in endearing terms, could have resulted in his injury or prejudice before the jury.

From what we have said, it follows that the State's motion for rehearing is granted, the reversal set aside, and the judgment of the trial court affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

GRAVES, Judge.

It has been called to our attention that the opinion on State's motion for rehearing herein was signed by Judge Davidson, and that upon a former appeal of this cause that Judge was then occupying the position of State's Attorney, and interested in the prosecution of such cause.

The original opinion was discussed by the members of the court, and after such discussion Judge Davidson was directed to prepare an opinion in line with the decided views of the court, no one thinking at such time of Judge Davidson's status upon the prior presentation of this case. The opinion on State's motion for rehearing expresses the views not only of the court but also of the writer hereof, and his name will hereafter appear signed to the opinion, and Judge Davidson's name will be withdrawn therefrom.

Appellant's motion concerns itself mainly with the failure of the trial court to admit in evidence a letter directed to appellant's wife and signed by John Gonzales, postmarked Vernon, Texas. The main reason for the trial court's failure to admit such letter seemed to be that it was not shown to have been in the handwriting of the deceased person. There seems to have been some difference as to what took place at the trial this letter was attempted to be introduced in evidence, and the trial court, refusing to approve appellant's proffered bill, prepared one of his own, which was not acceptable to appellant's attorney, who then filed a blanket approval of his refused bill, signed by three bystanders, who merely made affidavit relative to the correctness of the refused bill. The State then countered with an affidavit of three bystanders affirming the correctness of the trial court's bill. These two affidavits doubt-

less counteracted the effect of either, but be that as it may, we think that under the facts herein shown appellant was in possession of the knowledge that the deceased was sexually intimate with his wife before the writing of this letter, and seemed to care little about it, and on account of the failure to show whose handwriting such letter was in, we do not think same was admissible. It is also shown that appellant claimed to have struck the deceased in self-defense, and seemed to care but little, if anything, about the unfaithfulness of his wife, about whose transgressions he was already familiar. The letter could have given him no more information than he was already possessed of.

We think the opinion on State's motion for rehearing herein correctly decided this case, and the motion is overruled.