William Marcos
VALCARCEL, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–85–0214–CR.

Court of Appeals of Texas,
Amarillo.

Aug. 28, 1986.

Rehearing Denied Oct. 6, 1986.

William R. McKinney, Jr., Amarillo, for appellant.

Danny Hill, Dist. Atty., James Farren, Asst. Dist. Atty., Amarillo, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant William Marcos Valcarcel (William) appeals from his conviction of aggravated possession of cocaine and the consequent jury-assessed punishment of ninety-nine years confinement in the Texas Department of Corrections and a fine of $100,-000. We affirm the conviction.

In five grounds, appellant contends that: (1) the verdict is contrary to the law and evidence because there is insufficient evidence to prove that appellant is guilty of possession; (2) the trial court erred in failing to suppress the fruits of the search of appellant's vehicle in that the consent to search was not free and voluntary; (3) the trial court erred in admitting the testimony of the State's witness, Wayne Clark Williams, since it was prejudicial and "tantamount" to an improper form of bolstering; (4) he was deprived of a fair and impartial trial in violation of the U.S. Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure in that an actual conflict of interest adversely affected counsel's representation of appellant and his

wife; and (5) he was deprived of a fair and impartial trial due to ineffective assistance of counsel in violation of the U.S. Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure.

■ In his first ground, appellant challenges the sufficiency of the evidence to prove that he actually possessed the contraband. The standard for reviewing the sufficiency of the evidence on appeal is the same for direct and circumstantial evidence cases, and that is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See also Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App.1984); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex. Crim.App.1983) (opinion on motion for rehearing). The reviewing court will look at all the evidence in the light most favorable to the verdict or judgment. *Houston v. State,* 663 S.W.2d at 456. In applying this analysis, a conviction based upon circumstantial evidence may not be sustained on review unless the circumstances exclude every reasonable hypothesis except the guilt of the defendant, and proof amounting to no more than a strong suspicion of guilt is not sufficient to uphold the conviction. Nevertheless, it is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion of guilty is warranted by the combined and cumulative force of all the incriminating circumstances. *Gilmore v. State,* 666 S.W.2d 136, 154 (Tex.App.— Amarillo 1983, pet. ref'd).

On April 21, 1984, Highway Patrol Trooper Frank Frausto clocked William and Maria Valcarcel, husband and wife, traveling in a 1984 silver Tempo automobile at the speed of 85 m.p.h. on Interstate 40. The vehicle had Florida license plates registered in Dade County. He pulled the automobile over and asked William, the driver of the vehicle, to have a seat in the officer's car. William then produced a

Florida driver's license and told the officer that he and his wife were on a pleasure trip to Las Vegas. He said they were going to leave the car in Las Vegas and fly home. The car was a rental car and had been rented by a person other than William because neither he nor Maria had a credit card. William told the trooper his occupation was that of delivery man.

At that point, Frausto asked William to sign a consent-to-search form which William did. Potter County Deputy Sheriff Mancie Light then arrived and removed Maria, who was seated in the passenger seat. Both officers then searched the rental car. In the console between the front seats, they found a small vial containing a white powder, later proven to be cocaine, and a little spoon with a marijuana leaf design on it. William and Maria were then placed under arrest, read their rights, and narcotics agents were called.

When he was told of the items located by the officers, William told Frausto that the cocaine in the small vial was for his own personal use to keep awake while driving and that he "always carried a container like this with cocaine in it in Florida and the police officers never did nothing about it." When a more complete search of the rental car was conducted by narcotics officers, they found a round cylinder taped with duct tape and wired underneath the bumper of the car. Since the officers could not remove this cylinder at the scene, they took the car to the Department of Public Safety office in Amarillo where it was removed. The cylinder was later shown to contain approximately 680 grams of cocaine.

Officer Wayne Clark Williams testified that he had received training from New Mexico law enforcement officers as to a "drug courier profile." He stated that under this profile, many drugs are imported to Miami, Florida, particularly Dade County, and shipped to points on the west coast, primarily Las Vegas and Los Angeles. The couriers drive rental cars, usually late models, and they are often rented by other people. With cocaine, the use of gray duct tape is prevalent to hide the odor of the

drugs and sometimes air fresheners and talcum powder are used. The drugs are often hidden in secret compartments in the trunk and in panels, heater vents, and fender walls. The couriers are usually of Spanish descent and often consist of a husband and wife team. They are usually cooperative with law enforcement officers although they often carry weapons. The cars used to transport the drugs are normally dropped at the airport of the destination city. Often the courier will use part of the drugs on the trip in order to stay awake. Officer Williams testified that Officer Frausto had received the same information concerning the drug courier profile that he had.

Roy Murphy, supervisor of the Texas Department of Public Safety, Amarillo Field Crime Laboratory, testified that the small vial contained 1.11 grams of 41% strength cocaine and the cylinder contained 686.1 grams of 44% strength cocaine. Because of the consistent degree of purity, he said it was possible and consistent that the cocaine from the small vial could have been obtained from the cylinder. He also testified that one gram sizes are usually in the 15–20% strength range and it would be unusual to have 41% strength cocaine in the amount of one gram although there were exceptions to that rule.

Wanda Maxine Terry, desk manager of the Coronado Inn Motel, testified that in April she overheard a conversation between a man named Mr. Sotolongo and William and Maria. She testified Maria was "agitated and angry" and said, "The family is going to get that son-of-a-bitchin' Williams," at which time Sotolongo told her to hush. Maria also said, "He is catching too many of us." Although the conversation was in both Spanish and English, Ms. Terry testified that these remarks were made in English. Officer Williams was then recalled and he testified he had previously made two courier drug busts involving parties of Cuban descent.

Mario Sotolongo testified he is married to an aunt of Maria and works for a food distributorship Maria and William own.

He came to Amarillo in April 1984 to get Maria and William out of jail and take them home. He stated they were traveling through Amarillo on vacation on their way to Las Vegas where he believed Maria had a cousin. He denied he ever heard Maria threaten an Officer Williams. He admitted Maria's cousin brought him some money from Las Vegas for the bail bonds but said he collected the remainder "here and there." He also said that Maria and William own two vans—one used in the business and one for personal use.

Jose Quadreny testified he used his credit card to rent a car for Maria and William to take their vacation because they did not own a credit card. He also said that they had to wait a longer time at the rental place to get a different car when they told the rental agent it was for a one-way trip.

Maria herself testified that she and William own their own home and two vans. Their net income for 1984 was about $62,000. She stated she "wanted to drive all over into Las Vegas to see the view," and that they were traveling to Las Vegas to visit her cousins. She denied she had any knowledge of any illegal contraband in the car. She described the console as being "like a glove box between two seats," and in response to the question of how many compartments it had, she replied, "It's a little one in the front like for keeping change, and another big one in the back." She testified she had not been in the console and had no knowledge of anything it contained. She denied that either she or her husband was a drug courier. She also denied that either herself or her husband used cocaine. Maria said the couple was carrying $1400 with them and they drove straight through from Miami to Wichita Falls, Texas where they spent the night. She denied making the statements that Ms. Terry said she had made. She also said that she and her husband decided to drive to Las Vegas and fly back because they only wanted to take one week of vacation.

▮ Possession means more than mere presence at the scene of a crime. It involves the exercise of control and management over the thing possessed and knowledge that the thing possessed is contraband. *Rice v. State*, 548 S.W.2d 725, 727 (Tex.Crim.App.1977), *overruled on other grounds, Lippert v. State*, 664 S.W.2d 712, 722 (Tex.Crim.App.1984). An accused may possess drugs with another or others and the possession need not be exclusive. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985); *Sewell v. State*, 578 S.W.2d 131, 135 (Tex.Crim.App.1979). Therefore, facts and circumstances may be sufficient to show an accused acted with others in possessing a narcotic drug, if there is an affirmative link connecting the accused and the drug. *McGoldrick v. State*, 682 S.W.2d at 578.

▮ The question then is whether the facts and circumstances here existent are sufficient to show such a link. The following factors have been enumerated as facts and circumstances that establish the necessary affirmative link: (1) the contraband was in open or plain view; (2) the place where the contraband was found was in close proximity to the accused and readily accessible to him; (3) the amount of contraband found was large enough to indicate that the accused knew of its presence; and (4) the accused was closely related to other persons in joint possession of the contraband and the conduct of the accused with respect to the contraband was such as to indicate his knowledge and control. *Earvin v. State*, 632 S.W.2d 920, 924 (Tex.App.—Dallas 1982, pet. ref'd); *see also Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim.App.1981).

▮ The evidence before us reveals that appellant had driven the rental car periodically throughout the 1800 mile trip from Miami, Florida to Amarillo and, indeed, was the driver of the car at the time it was stopped by police. The small vial of cocaine discovered in the console of the car was readily accessible to him, and he admitted at the scene that the small vial belonged to him and was for his own personal use. There is also the testimony of chemist Roy Murphy that the strength of the narcotic found in the small vial was 41%

while that of the drug located in the cylinder was 44% and therefore the contents of the small vial could have been obtained from the contents of the cylinder. These facts, when viewed in the light most favorable to the verdict, establish the affirmative link necessary to show possession by appellant. His first ground of error is overruled.

■ Appellant contends in his second ground that his consent to search the vehicle was not free and voluntary and therefore the trial court should have suppressed the fruits of that search. Voluntariness is a question of fact to be determined from the totality of the circumstances surrounding the consent. *Meeks v. State*, 692 S.W.2d 504, 510 (Tex.Crim.App.1985); *Rumbaugh v. State*, 629 S.W.2d 747, 749 (Tex.Crim.App.1982). Before the consent to search is deemed effective, the State must prove by clear and convincing evidence that it was freely given. *Meeks v. State*, 692 S.W.2d at 509; *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Crim.App.1976).

Officer Frank Frausto testified he stopped appellant's vehicle for the traffic violation of speeding. Tex.Rev.Civ.Stat. Ann. art. 6701d § 148 (Vernon 1977) gives an officer who stops an out-of-state vehicle for speeding the right to take the driver before a magistrate or issue him a written notice to appear in court. An officer is therefore authorized to at least temporarily detain the driver of such a vehicle. The initial stop was therefore justified and legal. The officer asked appellant to sit in his vehicle and requested appellant's driver's license and the rental agreement. Based on his observations and conversation with appellant, he obtained information which made him suspicious that appellant fit the drug courier profile. He therefore asked appellant for consent to search the vehicle. Even if Officer Frausto did not have suspicions amounting to probable cause, appellant has cited us no authority, nor have we found any, that says that a law enforcement officer must have probable cause to *request* a person to voluntarily relinquish his right to be free of an illegal search.

When Officer Frausto requested appellant to sign a consent-to-search form, he stated that he informed appellant that he did not have to sign it. Upon being asked by appellant what the officer was looking for, Officer Frausto told appellant the search would be for illegal drugs. Frausto testified that appellant replied that he (Frausto) "wouldn't find anything, go ahead and search." Appellant had informed Frausto that he understood English; however, the conversation between them took place partly in English and partly in Spanish after Frausto initiated the use of Spanish. Appellant looked at the consent form before signing it and signed it in the officer's presence.

While a warning that an individual does not have to consent to a search and has the right to refuse it is not essential, it does have evidentiary value in determining a valid consent. *Meeks v. State*, 692 S.W.2d at 510. There is no evidence that appellant was coerced or threatened into signing the consent form and there is evidence he was warned that he did not have to sign it. We find from a totality of the circumstances that the stop was legal and the consent to search freely given. Appellant's second ground is overruled.

■ In his third ground, appellant contends that the court committed error in permitting Officer Wayne Clark Williams to testify as to the drug courier profile when that testimony was prejudicial and constituted improper bolstering. Appellant contends that bolstering may only take place after impeachment of a witness and because Officer Williams was called as the State's first witness, the State attempted "to fortify the wall before it ha[d] been attacked." Appellant also claims such testimony was highly prejudicial because it shifted the burden to appellant to prove he was not a drug courier. Appellant's pretrial motion to suppress this testimony was overruled and, at trial, his objection that the testimony was "totally irrelevant and

highly prejudicial to the Defendants" was also overruled.

Bolstering occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Pless v. State,* 576 S.W.2d 83, 84 (Tex.Crim.App.1978). Officer Wayne Williams was the first witness called in the case and therefore his testimony could not have been offered for the purpose of adding weight to earlier testimony. The testimony complained of by appellant does not fall within that rule. The testimony was properly offered, however, on another independent basis. Appellant's car was legally stopped for a traffic offense. The testimony as to the training received by Officer Williams and Officer Frausto in regard to the drug courier profile was properly admitted to show that upon his own observations and the gathering of further information from appellant, Officer Frausto had grounds to be suspicious and acted reasonably in requesting to search the vehicle. *Cf. Accaria v. State,* 661 S.W.2d 249, 251 (Tex.App.—Houston [1st Dist.] 1983, no pet.). As previously discussed, consent was freely given by appellant for that search. Ground of error three is overruled.

In his fourth ground, appellant contends he was denied effective assistance of counsel in that an actual conflict of interest adversely affected trial counsel's representation of both him and Maria. A potential conflict of interest is not sufficient to render counsel ineffective. A defendant such as appellant who has raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). An actual and significant conflict of interest exists where one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing. *Ferguson v. State,* 639 S.W.2d 307, 310

(Tex.Crim.App.1982); *Gonzalez v. State,* 605 S.W.2d 278, 282 (Tex.Crim.App.1980).

At the hearing on the motion for new trial, trial counsel, who had been retained by the defendants, stated that he explained the concept of interspousal immunity to both defendants. He also explained the consequences of one party accepting the plea bargain offered by the State and the other not doing so. Counsel stated that William did not testify at the guilt-innocence phase upon his advice and that Maria decided to testify after receiving his advice. He testified he discussed the consequences of one defendant testifying and the other not doing so with both defendants. Trial counsel admitted that, in retrospect, he believes there was a conflict of interest but he "never became aware of it until after the trial was over." One conflict, he theorized, was that for Maria's benefit, he *supposed* he had some duty to get William to testify "in clearing her" which would conflict with the decision for William not to testify. Moreover, he also said that he did not specifically argue that William's statement that the vial was his was exculpatory as to Maria. While counsel stated he believed this later-perceived conflict affected his representation of the two people, he also stated he represented them at trial to the best of his ability. Moreover, he testified that in his initial contact with William and Maria he discussed the "potential for conflict" and each of them indicated their understanding of that potentiality.

Maria testified that she did not have any conversation with trial counsel about problems in representing both her and her husband. She did remember him telling her she could not be required to testify against her husband but he did not explain to her how that might affect his defense of them. William testified he did not recall counsel discussing a potential conflict of interest with them. He stated he did not become aware of a conflict of interest "until after he was given the sentence."

Thus, the evidence was conflicting at the hearing on the motion for new trial as to whether trial counsel discussed

the potential for conflict of interest with both defendants and how it might affect their testimony against each other. No findings of fact or conclusions of law appear in the record. At a hearing on a motion for new trial, issues of fact are for the determination of the trial judge and he is free to believe one witness' testimony and to disbelieve or reject all or part of the testimony of other witnesses. *McCartney v. State*, 542 S.W.2d 156, 162 (Tex.Crim. App.1976). The trial judge must have chosen to believe the testimony of counsel that he had fully informed appellants of their rights and that they waived these rights as they were privileged to do. *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex.Crim.App. 1981). Where there is conflicting evidence, there is no abuse of discretion when the motion for new trial is overruled. *McCartney v. State*, 542 S.W.2d at 162. Parenthetically, we note that trial counsel's statement that in retrospect he felt there was a conflict of interest is a conclusion of law not binding on the trial judge.

We note that there is additional authority for holding that there was no actual conflict of interest in this situation. In *Taylor v. State*, 674 S.W.2d 323, 329 (Tex.App.—Waco 1983, pet. dism'd as improvidently granted), the appellant argued that his counsel was hampered in his ability to shift blame from appellant to the other co-defendant as a result of dual representation, a situation like that currently before us. The Court, in holding that the record did not show appellant stood to gain significantly from separate representation, stated:

> Certain risks are inherent in the decision of co-defendants to rely on joint legal representation, whatever the reason or perceived benefits may be. The fact their legal counsel may ultimately find maneuvering more difficult, when confronted with evidence showing the State's case to be stronger against one client than the other, does not mean that if convicted a defendant is entitled to reversal because hindsight has proven the co-defendants' decision to have been ill-advised. The same reasoning would

apply where legal counsel realizes his clients are being viewed as partners in crime due to joint legal representation. If actual conflict of interests can be established on this basis, a case in which an untested strategy will not look better than an unsuccessful one will be rare. *Id.* at 330.

Appellant cites the case of *Ex parte Parham*, 611 S.W.2d 103 (Tex.Crim.App.1981) for the authority that where one co-defendant is advised not to testify at the same time the duty to the other co-defendant requires an attempt to secure that testimony, the representation of both clients is affected. In that case the attorney testified, and the court noted, that he was aware of the conflict from the beginning of his work on the case. In the case before us, trial counsel stated he did not recognize that the interests of his two clients might be divergent until the trial was over. He also said the decision as to whether William and Maria would testify was not made until the morning the trial started, at which time he discussed with them the consequences of Maria testifying and William not doing so. As we have previously noted, the parties were entitled to waive their right to conflict-free counsel if they were fully informed of the consequences of that waiver. Appellant's fourth ground is overruled.

In his fifth ground, appellant claims he was deprived of a fair and impartial trial due to ineffective assistance of counsel. He specifically contends that trial counsel failed (1) to file adequate discovery motions, (2) to file any motions to suppress oral statements that were attributed to appellant, (3) to properly perfect error by requesting a continuance after learning of the State's "surprise" witness Wanda Terry, and (4) to oppose consolidation of appellant's case with his wife's case.

■ The inquiry for our determination is whether counsel's assistance was reasonably effective considering all the circumstances. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 694 (1984). In order to show

that counsel's assistance was so defective as to require reversal, appellant must demonstrate the following:

First, ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning· as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687–88, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Prejudice must be shown by a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Moreover, a presumption exists in favor of counsel's conduct and appellant carries the burden of disproving "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, 466 U.S. at 689, 104 S.Ct. at 2066, 80 L.Ed.2d at 694–95. The attorney's assistance is to be judged by a totality of the representation and not by hindsight. *Ex parte Robinson*, 639 S.W.2d 953, 954 (Tex.Crim.App.1982).

██ In reviewing the challenged conduct of appellant's counsel, we turn first to his alleged failure to file adequate discovery motions and other motions in accordance with *Brady v. Maryland.* Trial counsel filed an extensive motion in limine, a motion to list witnesses, and a motion to suppress evidence seized at the time of and subsequent to the arrest. He also testified that he had an agreement with the Assistant District Attorney to have open file discovery and that the file was turned over to him and he reviewed it. Appellant does not allege any specific motions that trial counsel should have filed or how the failure to file them prejudiced him. We therefore find no merit in that contention.

██ Second, appellant contends that counsel failed to file any motion to suppress the oral statement made by appellant that the small vial of cocaine belonged to him. He contends that this statement could have been kept out of the evidence because it was made subsequent to his arrest but before any *Miranda* warnings were given. He says the evidence shows he was never advised of his right to remain silent until he had been transported back to the District Office of the Texas Department of Public Safety. This statement is clearly in contradiction to the evidence. Even though the consent to search form was apparently not signed until a later time, there is evidence the warnings were given prior to appellant's statement. During examination of Officer Frausto, the following dialogue occurred:

Q. (By Mr. Markley) Well, can you tell the jury what you did at the scene immediately after discovering that vial?

A. I read them their constitutional rights.

Q. Off of your Miranda card?

A. Yes, sir.

Q. Do you carry that with you?

A. Yes, sir, I do.

Q. Do you carry those rights forms with you?

A. No, sir, we don't.

Q. So that's why you waited until you got to the office, then, I suppose.

A. Yes, sir.

We see no reversible error in not attempting to suppress appellant's statement.

██ As his third complaint, appellant alleges that once counsel became aware of the "surprise" witness and what her testimony would be, counsel should have perfected error by requesting a continuance. Trial counsel testified that he was informed of the use of Wanda Terry as a witness during a recess of the trial. He was advised of her presence ·by Lonnie Markley, the Assistant District Attorney, and shown the information the State had in reference to her. He also stated that he questioned her at that time. Lonnie Markley testified himself that he had only become aware of Wanda Terry on the second day of trial.

At the time the testimony was sought to be admitted at trial, Wanda Terry was examined outside the presence of the jury. The court ruled as to what Ms. Terry would be allowed to testify and trial counsel noted his objection to that testimony. He also cross-examined the witness at trial. Appellant has failed to show that trial counsel would have conducted the defense any differently if a continuance had been requested and we refuse to second-guess trial counsel's decision not to do so. *See Ewing v. State*, 549 S.W.2d 392, 395 (Tex.Crim. App.1977), *overruled on other grounds, Hurley v. State*, 606 S.W.2d 887, 889 (Tex. Crim.App.1980); *Merx v. State*, 450 S.W.2d 658, 660 (Tex.Crim.App.1970).

Finally, appellant contends his counsel should have opposed the State's motion to consolidate appellant's case with that of his wife. Particularly, he says that the threats and statements made by his wife at the motel were not admissible against him because they were not shown to be made in his presence and even if they were, a limiting instruction should have been requested. We note parenthetically that there is evidence in the record that the statements were made in the presence of appellant. Appellant also claims not to have had an understanding of the problems associated with a consolidated trial.

Severance is not a matter of right. Tex.Code Crim.Proc.Ann. art. 36.09 (Vernon 1981) requires a severance, upon motion, if the evidence shows that a prior criminal record of a co-defendant is admissible or a joint trial would, as a matter of law, prejudice a defendant. Otherwise, it is within the trial court's discretion to grant severance. *Garza v. State*, 622 S.W.2d 85, 91 (Tex.Crim.App.1981) (opinion on motion for rehearing); *Robertson v. State*, 632 S.W.2d 805, 808 (Tex.App.—Fort Worth 1982, no pet.). Trial counsel testified that at the time the motion to consolidate was filed, he was not aware that the interests of his two clients were in conflict. Counsel's failure to request prior to trial a severance not due him as a matter of right cannot form the basis of a claim of ineffec-tive assistance of counsel. *Robertson v. State*, 632 S.W.2d at 809. There was no evidence that either party had a prior criminal conviction or that the consolidation, as a matter of law, prejudiced appellant. Appellant's fifth ground is overruled.

In summary, all of appellant's grounds of error are overruled, and there being no reversible error, the judgment is affirmed.