Maria de Los Angeles VALCARCEL & William Marcos Valcarcel, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 1249–86, 1250–86.

Court of Criminal Appeals of Texas, En Banc.

Feb. 1, 1989.

William R. McKinney, Jr., Amarillo, Lewis Dickson, and Dick DeGuerin, on petition for decretionary Review only, Houston, for appellant.

Danny E. Hill, Dist. Atty. and James A. Farren, Asst. Dist. Atty., Amarillo, Robert Huttash, State's Attorney and Matthew W. Paul, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANTS' PETITIONS FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The record before us reflects that Maria de Los Angeles Valcarcel and William Marcos Valcarcel, who are husband and wife, henceforth appellant Maria and appellant William, were separately indicted and jointly tried and convicted by a jury of unlawfully possessing at least 400 grams of cocaine. The jury also assessed punishment for each appellant at 99 years' confinement in the Department of Corrections and a $100,000 fine, the maximum possible punishment.

By separate published opinions, the Seventh Court of Appeals rejected all of appellants' points of error and affirmed the trial court's judgments of conviction. See *Valcarcel v. State*, 718 S.W.2d 359 (Tex.App.–7th 1986), and *Valcarcel v. State*, 718 S.W. 2d 368 (Tex.App.–7th 1986).

We granted the petitions for discretionary review that were filed on behalf of each appellant by the same attorney in order to review appellants' same contention, to-wit: "The Court of Appeals has condoned, if not expressly approved of an unprecedented view of what can qualify as *relevant material evidence*." (Emphasis supplied.) [1]

---

1. In their mutual ground for review, appellants ask the following question: "Is it now going to be the law that the State can 'brainwash' and predispose a jury to a guilty finding by use of extensive, repetitious testimony as to a nebulous, so-called 'drug courier profile' (or just

On direct appeal, each appellant asserted that the trial judge erred in admitting in the presence of the jury testimony of Wayne Clark Williams, a Department of Public Safety Trooper, about the "drug courier profile" that Officer Williams had previously compiled regarding motorists who travel on Texas Interstate Highway 40. The record shows that Officer Williams did not participate in or have any-

thing whatsoever to do with the arrest of either appellant. Furthermore, Officer Williams does not appear to have gotten involved in the case until the hearing that was held on appellants' motions to suppress evidence.[2]

The evidence shows that appellant William was stopped by Officer Frank Frausto, another Department of Public Safety Trooper who was not then accompanied by

plain 'guilty profile' as it occurred in this case) even though lawfulness of the arrest and search is never made an issue before the jury?"

We also granted appellant Maria's petition in order to make the determination whether the court of appeals correctly overruled her point of error that she was denied the effective assistance of counsel because there was an actual conflict of interest that adversely affected trial counsel's representation of both her and her husband in the joint trial. Because we will sustain appellants' first contention, and because we believe that the issue that appellant Maria raises will not again arise in the event there is a new trial or trials, we will not address appellant Maria's contention concerning the alleged conflict of interest.

We also granted appellant Maria's petition in order to decide whether the court of appeals correctly ruled that the evidence was sufficient to sustain her conviction. We now find that our decision to grant appellant Maria's petition for this reason was improvident, and thus will not discuss or decide that issue.

2. We find that it is unnecessary for us to summarize Officer Williams' testimony that the jury heard about the "drug courier profile" that he compiled after he and Officer Frausto both attended the same one-day seminar that was conducted in Amarillo by New Mexico State Police on the drug courier profile that they had compiled for motorists traveling New Mexico Interstate Highway 40, because his testimony closely resembles what has already been written on the subject of drug courier profiles. See, for example, Vol. 1, No. 9, May–June 1984, *Drug Law Report*, which discusses the "drug courier profile" that has been compiled by the New Mexico State Police, which is the same drug courier profile that Officer Williams adapted for motorists who travel Texas Interstate Highway 40. Also see Vol. 1, No. 3, *Drug Law Report*, May–June, 1987; Vol. 1, No. 5, Drug Law Reporter, September–October, 1983; Vol. 1, No. 3, *Drug Law Reporter*, May–June, 1983; Vol. 1, No. 5, *Drug Law Reporter*, September–October, 1983; Vol. 8, Nos. 6 and 7, *Search and Seizure Law Report*, June–July, 1981; Hollander and Nelson, "In Search of a Reasonable Suspicion on the Road to California: Stops, Searches, and Seizures and the 'Drug Courier Profile' ", Vol. 15, No. 3, *Search and Seizure Law Report*, April, 1988; 3 La Fave, *Search and Seizure*, § 9.3;

*United States v. Miller*, 821 F.2d 546 (11th Cir. 1987); *United States v. Ballard*, 573 F.2d 913 (5th Cir.1978). In *United States v. Miller*, supra, the Eleventh Circuit Court of Appeals pointed out that in *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980), "the Supreme Court expressed concern, in the airport context, about a drug courier profile that would 'describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures' if the Court validated the use of the profile ... As well as protecting alleged criminals who are wrongfully stopped or searched, the Fourth Amendment of the Constitution protects innocent citizens as well." In *United States v. Hernandez Cuartas*, 717 F.2d 552 (11th Cir.1983), the Eleventh Circuit held that "drug profile testimony is inherently prejudicial because of the potential it has for including innocent citizens as profiled couriers. We denounce the use of this type of evidence as substantive evidence of a defendant's innocence or guilt." For a more detailed discussion of the subject that a particular "drug courier profile" for air travelers is not a talismanic label that a state or the government can apply to any given set of facts to obviate consideration of whether reasonable suspicion on the part of the police exists to stop and interrogate an individual, and that the "airport drug courier profile" has a chameleon-like way of adapting to any particular set of circumstances, see *United States v. Sokolow*, 831 F.2d 1413, 1418 (9th Cir.1987). Also see *United States v. Hall*, 653 F.2d 1002 (5th Cir.1981); *United States v. Elmore*, 595 F.2d 1036, n. 3 (5th Cir.1979); Vol. 1, No. 3, *Drug Law Reporter*, May–June, 1983, commencing at page 32; Vol. 1, No. 27, *Drug Law Reporter*, May–June, 1987, at page 324, which discusses the "Amtrak drug courier profile"; and Vol. 1, No. 5, *Drug Law Reporter*, September–October, 1983, which discusses the "real estate broker's client's drug courier profile." In Texas, all warrantless searches, even based upon probable cause, are presumed illegal, and in order for the State to come within an exception to the general rule, such as a search conducted pursuant to consent by the defendant, it must establish by positive and unequivocal evidence that the consent was intentionally given by the defendant. *Meeks v. State*, 692 S.W.2d 504 (Tex.Cr.App. 1985).

anyone, for driving his vehicle 85 miles per hour on Texas Interstate Highway 40 near Amarillo, which constituted a violation of the provisions of Art. 6701d, § 166, V.A.C.S. Thereafter, appellant William gave Officer Frausto his consent to search his vehicle. As a result of the search, Officer Frausto and other officers who later came on the scene found the cocaine that was the basis of appellants' convictions. Appellant Maria was a passenger in the car.

The court of appeals rejected appellants' contention that Officer Williams' testimony should not have been admitted before the jury. It gave two reasons for its decision:

Officer Wayne Williams was the first witness called in the case [by the State] and therefore his testimony could not have been offered for the purpose of adding weight to earlier testimony. The testimony complained of by appellant does not fall within that rule. *The testimony was properly offered, however, on another independent basis. Appellant's car was legally stopped for a traffic offense. The testimony as to the training received by Officer Williams and Officer Frausto [the officer who actually stopped the vehicle that was driven by appellant William for speeding and formally arrested both appellants] regarding the drug courier profile was properly admitted to show that upon his own observations and the gathering of further information from William Valcarcel, Officer Frausto had grounds to be suspicious and acted reasonably in requesting to search the vehicle.* Cf. *Accaria v. State,* 661 S.W.2d 249, 251 (Tex.App.–Houston [1st Dist] 1983, no pet.). Consent was given for that search. Ground of error two is overruled. (Emphasis supplied.)

■ For the reasons stated in this Court's decisions of *Guerra v. State,* (Tex. Cr.App., No. 69,081, May 4, 1988) (Held, at pages 35 and 36 of the opinion, " 'Bolstering' occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of [relevant] evidence offered by the same party"); *Livingston v. State,* 739 S.W.2d 311 (Tex.Cr.App.1987); and *McKay v. State,* 707 S.W.2d 23 (Tex.Cr.App.1985), we agree with the court of appeals' first holding that because Officer Williams was the first witness to testify for the State his testimony regarding the "drug courier profile" that he had previously compiled could not have been used to bolster Officer Frausto's later testimony.

■ We are unable, however, to agree with the second reason that the court of appeals gave. The court of appeals held that Officer Williams' testimony about the "drug courier profile" that he had previously compiled "was properly admitted to show [the jury] that upon his [Officer Frausto's] own observations and the gathering of further information from William Valcarcel, Officer Frausto had grounds to be suspicious and acted reasonably in requesting to search the vehicle. Cf. *Accaria v. State,* 661 S.W.2d 249, 251 (Tex. App.–Houston [1st Dist] 1983, no pet.)."

We disagree with the court of appeals' holding for several reasons.

First, if the court of appeals relied upon the First Court of Appeals decision of *Accaria,* supra, as its authority, given the differences between the facts of that cause and the issue that was before the court of appeals to resolve in that cause and the facts and the issue that is before this Court to resolve in this cause, its reliance on *Accaria,* supra, was totally inappropriate and misplaced.

In *Accaria,* supra, the First Court of Appeals was confronted with the issue *whether or not an affidavit for a search warrant was valid.* In this cause, however, no search warrant was ever sought by the police.

In *Accaria,* supra, the court of appeals found that the affidavit for the search warrant in that cause was valid. In finding that the affidavit was valid, it made the assumption that "Vain 1459", a narcotics detection dog, was the functional equivalent of an unnamed informant, i.e., in deciding whether it was established before the issuing magistrate that "Vain 1459" was

reliable and credible, the court of appeals equated the dog to an unnamed confidential informant, and found that "Vain 1459" was both reliable and credible. In this cause, neither a "narcotics" detection dog nor a "human being" informant is implicated.

In *Accaria*, supra, the court of appeals concluded: "A neutral and detached magistrate could infer from the facts stated in the affidavit [that was signed by a Houston Police Officer and not by Vain 1459] that Vain had signaled by some method, previously viewed by the affiant, such as whining, barking, or scratching the luggage. The affidavit satisfied both prongs of Aguilar." (251). The court of appeals thereafter found, at least by dicta or obiter dicta, that the decision of the Supreme Court of the United States in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983), had "suggested that a matching drug courier profile *coupled with* a positive sniffing by a trained dog constituted probable cause for an arrest", and "agreed with this observation." (251). (Emphasis supplied.)

Because of the differences between the facts and the legal issues in *Accaria*, supra, and appellants' cause, we need not, and do not, decide today whether in a comparable factual situation we would approve or disapprove what the First Court of Appeals stated and held in *Accaria*, supra.

The court of appeals stated and held the following: "The testimony as to the training received by Officer Williams and Officer Frausto regarding the drug courier profile was properly admitted to show that upon his [Frausto's] own observations and the gathering of further information from William Valcarcel, Officer Frausto had grounds to be suspicious and acted reasonably in requesting to search the vehicle...." What does the above mean? For example, does the above mean that notwithstanding the fact that Officers Frausto and Williams both attended the same seminar that was conducted in Amarillo by the New Mexico State Police regarding their "New Mexico Interstate 40 Highway drug courier profile" Officer Williams'

testimony about the drug courier profile that he had compiled after attending the seminar would shed light on why Officer Frausto made the decisions that he made when Officer Williams was not present, namely: (1) his decision to stop appellants' vehicle for speeding, (2) his decision to ask appellant William whether he would consent to a search of his vehicle, and (3) his decision to conduct a search of appellant William's vehicle after he had obtained appellant William's consent to search the vehicle? Because there is no evidence that might show or establish a relationship between what Officer Williams might have learned at the institute that Officer Frausto did not learn, and that this somehow had an effect upon Officer Frausto's making the above decisions that he made, we do not understand how Officer Williams' testimony about the drug courier profile that he compiled after he attended the one-day seminar in Amarillo was relevant to any issue that the jury had to resolve.

As we have previously pointed out, Officer Williams had absolutely nothing to do with the arrest of either appellant William or appellant Maria, or the search of their automobile. Williams appears not to have gotten involved in the case until the hearing was held on appellants' pretrial motions to suppress.

Does the latter part of the above statement mean that before a law enforcement official can ask an individual who has been stopped for allegedly violating some traffic law, such as speeding, he must have grounds to be suspicious and must act reasonably in requesting that the individual give his consent to search the individual's vehicle? We are unaware of any such requirement in our law where a law enforcement official asks an individual to give his consent to search some object, such as a motor vehicle. Does the above mean that Officer Williams' testimony about the drug courier profile that he compiled after attending the one-day seminar in Amarillo establish that it was admitted in the jury's presence to establish probable cause for Officer Frausto to stop appellants' vehicle?

In *Dawson v. State*, 477 S.W.2d 277, 279–280 (Tex.Cr.App.1972), this Court held that where a hearing has been conducted on the defendant's motion to suppress, and it is overruled, unless the defendant thereafter raises in the jury's presence the issue of probable cause, testimony relating to probable cause to arrest should not be admitted for the jury's consideration. Also see the many, many cases collated in Vols. 14 and 16 *Texas Digest*, under Criminal Law Key numbers 419(1) and 1169(1).

When Officer Frausto saw appellants' vehicle speeding, this gave him probable cause to stop appellant's vehicle. No issue was raised by the evidence in the jury's presence that Officer Frausto did not have probable cause to stop appellants' vehicle. No evidence was adduced that might have reflected or indicated that Officer Frausto exercised coercion or duress when he sought appellant William's consent to search his vehicle. No real issue was raised by the evidence in the jury's presence that appellant William did not intentionally and voluntarily consent to Officer Frausto's search of his vehicle, and the court of appeals found that the consent that appellant William gave Officer Frausto to search his vehicle was a valid consent to search, which holding is not before us for review. Appellants' vehicle was not stopped by Officer Frausto as a result of Frausto's conducting at that time some sort of criminal investigation; he stopped appellants' vehicle solely because it was speeding and thereafter obtained appellant William's consent to search the vehicle.

■ The record reflects that when Officer Williams commenced testifying about "the Texas Interstate 40 Drug Courier Profile" that he had previously compiled, appellants' attorney objected on the grounds that Williams' testimony would be "highly prejudicial and inflammatory, and since he did not work this case, he would have nothing *relevant* to contribute that would not— ... that it would be totally *irrelevant* and highly prejudicial to the Defendants." (Emphasis supplied.) The trial judge overruled the objection and permitted Officer Williams to testify about the drug courier profile that he had previously compiled. We find that appellant sufficiently perfected his point of error for appellate review purposes.

Recently, in *Brown v. State*, 757 S.W.2d 739 (Tex.Cr.App.1988), this Court, at least implicitly, held that an objection that asserted that certain evidence was "irrelevant" would be a sufficient and adequate objection to preserve for appellate review a claimed error that such evidence was "irrelevant", and thus inadmissible. Also see Rules 401 and 402, *Rules of Criminal Evidence*. In this instance, appellant's trial attorney clearly objected to Officer Williams' testimony on the ground that it was irrelevant to any issue that was then before the jury.

■ We hold that the fact that appellant later cross-examined Officer Frausto about the drug courier profile on which Officer Williams had earlier testified does not constitute a waiver of or the curing of the trial judge's alleged error in allowing Williams to so testify.

"Generally speaking, the evidentiary doctrine of curative admissibility is a rule of law that is ordinarily used by appellate courts when it first finds that the trial court erred by admitting into evidence over proper and timely objection certain evidence or testimony that should not have been admitted into evidence, but because it also finds that the defendant thereafter presented the same kind of evidence or testimony to which he had previously objected, the error is deemed to have been waived or cured by the defendant...." *Sweeten v. State*, 693 S.W.2d 454, 456 (Tex. Cr.App.1985). An exception to this rule of law is "that the error in the admission of evidence or testimony was *not* cured or waived by the defendant if, in putting on the same kind of evidence or testimony that was erroneously admitted into evidence by the trial court, [the defendant] did so only to *rebut, destroy, or explain* the effect of the evidence or testimony that had been theretofore erroneously admitted over proper and timely objection." *Sweeten*, supra, at 456. Cf. *Daniel v. State*, 668 S.W.2d 390, 392 (Tex.Cr.App.1984) (Held,

the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence). Also see *Purtell v. State*, 761 S.W.2d 360 (Tex.Cr.App.1988).

In this instance, we hold that when appellants' trial attorney cross-examined Officer Frausto about the drug courier profile that Officer Williams had earlier testified about over objection he was merely attempting to destroy the effect of Officer Williams' previously admitted irrelevant testimony. Appellant, by cross-examining Officer Frausto, did not waive his claim that the trial judge erred in admitting Officer Williams' irrelevant testimony about the drug courier profile that he had previously compiled.

In *Brown,* supra, in deciding whether the complaining witness' testimony in that cause, which testimony concerned the emotional effects that the rape had on her, was relevant and thus admissible evidence, this Court stated the following:

> The issue that must be resolved is, therefore, nothing more than one of relevancy. Although not applicable to this case, Rule 401, Tex.R.Cr.Evid., states the definition of relevancy as follows: "Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In *Plante v. State,* 692 S.W.2d 487 (Tex.Cr.App.1985), Judge Campbell, writing for the Court, accurately defined relevancy to be evidence 'which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less probable ... [citation omitted].' id., at 491 ... Relevancy ... is predicated on a subjective relationship between the proffered evidence and a 'fact that is of consequence to the determination of the action....' Rule 401 Tex.R.Cr.Evid. Therefore, evidence is relevant only if it tends to make 'the existence of ... [that fact] more probable or less probable....'

Rule 401, supra. Consequently, any item of evidence that alters the probability of a consequential fact is relevant because to alter the probabilities of a fact there must be a subjective relationship between the proffered evidence and the ultimate fact. In other words, for an item of evidence to alter the probabilities of the existence of the consequential fact and thus be relevant it must logically increase one's knowledge and enhance the likelihood of ascertaining the truth about the fact [sought to be proved].

Also see Vol. 20 *Houston Law Review,* "Texas Rules of Evidence" (1983); Wendorf and Schlueter, *Texas Rules of Evidence Manual* (1988); *Weinstein's Evidence Manual* (1987); *Rules of Evidence for the United States Courts and Magistrates* (1985); Cotchett and Elkind, *Federal Courtroom Evidence* (1986); Burgess–Jackson, "An Epistemic Approach to Legal Relevance", Vol. 18 *St. Mary's Law Journal;* Holloway v. State, 751 S.W.2d 866 (Tex.Cr.App.1988); *Marquez v. State,* 725 S.W.2d 217 (Tex.Cr.App.1987); *Werner v. State,* 711 S.W.2d 639 (Tex.Cr.App.1986); *Bush v. State,* 628 S.W.2d 441 (Tex.Cr.App. 1982).

Given the undisputed facts of this cause, we find that the jury had no consequential factual issue to resolve concerning either Officer Frausto's stopping appellants' vehicle or the subsequent search thereof that he and other law enforcement officials conducted pursuant to appellant William's consent to search that he gave Officer Frausto. As previously pointed out, Officer Williams had absolutely nothing to do with the arrest of either appellant or the search of their automobile.

We find and hold that Officer Williams' testimony about the "Texas Interstate 40 drug courier profile" that he had previously compiled was irrelevant to any issue that was then or later before the jury to decide, and was inherently prejudicial to the right of appellants to receive a fair and impartial trial before the jury. The trial judge clearly erred in permitting the jury to hear Williams' testimony about the drug courier profile that he had previously compiled.

This, of course, is not to affirmatively state or imply that testimony about a drug courier profile that some law enforcement official has previously compiled will never be admissible. Our holding that Officer Williams' testimony about the drug courier profile that he had previously compiled was irrelevant to any issue in this case is limited to the facts of this case. Of course, a jury in a criminal case is to decide from admissible evidence and the court's charge whether the prosecution has established its case against the accused beyond a reasonable doubt. It is not to decide the accused person's guilt on irrelevant evidence or irrelevant testimony. Also see *United States v. Miller,* supra, and *United States v. Hernandez Cuartas,* supra.

The judgments of the court of appeals are reversed and these causes are remanded to the trial court for proceedings not inconsistent with this opinion.

CLINTON, Judge, concurring.

The contention addressed by the Court is ground for review number one in both petitions for discretionary review. Each certificate of service therein states that counsel served a copy of the petition on the state prosecuting attorney and the local district attorney. Our rules provide thirty days for the opposing party to file a reply to a petition. Tex.R.App.Pro. Rule 202(h). Neither attorney for the State took the opportunity to make a reply.

Now, for the first time, in its brief on the merits the State asserts that the ground for review "should be dismissed as improvidently granted because appellant's contention was not advanced in the court of appeals." State's Brief, at 6.

A more timely and orderly medium for raising questions of that nature is the reply to petition for discretionary review; it will alert the judge responsible for making an initial review to a putative problem, so that he may inform himself and, in making his report on the petition to the Court, direct its attention to the matter at the threshold of its determination of whether to grant or refuse the petition. See Tex.R.App.Pro. Rule 202(k).

In any event, that assertion is at odds with recognition by the State in its appellate brief below that appellants' argument went to "the alleged *irrelevant, inflammatory and prejudicial testimony,*" State's Brief, at 34–35.[1] It also flies in the face of one reason given by the court of appeals for overruling the related point of error, *viz:*

". . . . The testimony [of Troopers Wayne Williams and Frank Frausto] was properly offered, however, on another *independent* basis. Appellant's car was legally stopped for a traffic offense. The testimony of Officer Williams and Officer Frausto regarding the drug courier profile was properly admitted to show that upon his own observations and the gathering of further information from William Valcarcel [or appellant], Officer Frausto had grounds to be suspicious and acted reasonably in requesting to search the vehicle. Cf. *Accaria v. State,* 661 S.W.2d 249, 251 (Tex.App.—Houston [1st Dist.] 1983, no pet.)."

*Valcarcel v. State,* 718 S.W.2d 359, at 364 (Tex.App.—Amarillo 1986); *Id.,* at 374. This Court properly exercised its judicial discretion in determining to review that reason for decision of the Amarillo Court. Articles 4.04, § 2, and 44.45(b) and (c), V.A.C.C.P.; Tex.R.App.Pro. Rules 200(b) and (c)(2), and 202(a), (d)(5) and (k); see *Degrate v. State,* 712 S.W.2d 755 (Tex.Cr.App.1986).

The Court is also right on the merits of ground for review number one. The testimony in question was inadmissible for reasons that lend themselves to a progressional explanation.

For any evidence to be admissible it must be relevant to a material issue in dispute at trial. *Garza v. State,* 715 S.W.2d 642, at 644 (Tex.Cr.App.1986); *Williams v. State,* 622 S.W.2d 344, at 346 (Tex.Cr.App.1984); *Elkins v. State,* 647 S.W.2d 663, at 655 (Tex.Cr.App.1983), quoting from *Rubio v. State,* 607 S.W.2d 498 (Tex.Cr.App.1980) (concurring opinion, at 506); *Stone v.*

---

1. All emphasis is mine throughout unless otherwise noted.

*State,* 574 S.W.2d 85, at 89 (Tex.Cr.App. 1978).

Evidence which is not relevant is inadmissible. *Johnson v. State,* 698 S.W.2d 154, 160 (Tex.Cr.App.1985); Tex.R.Cr.Evid. Rule 402.

"Relevancy is that which makes the proposition at issue more or less probable." *Garza v. State,* supra, at 644; *Waldrop v. State,* 138 Tex.Cr.R. 166, 133 S.W.2d 969 (1939), quoting from Branch's Ann.Penal Code (1916) 62, § 97:

> "Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in evidence any circumstance which tends to make the proposition more or less probable."

*Id.,* 133 S.W.2d at 970; 1 Branch's Ann.Penal Code (2d ed. 1965) 136, § 120; Tex.R. Cr.Evid. Rule 401.

"No circumstance is relevant which does not make more or less probable the proposition at issue." Branch's Ann.Penal Code (1916) 62, § 97; 1 Branch's Ann.Penal Code (2d ed. 1965) 137, § 120. Compare *Franks v. State,* 139 Tex.Cr.R. 42, 138 S.W.2d 109, at 114 (1940), with *Stewart v. State,* 138 Tex.Cr.R. 286, 135 S.W.2d 103, at 104–105 (1939).

Whether Trooper Frausto "had grounds to be suspicious and acted reasonably in requesting to search the vehicle" were not contested issues before the jury—much less issues at all. The state of mind of an officer stopping a speeding motorist does not make more probable that the motorist is possessing a controlled substance concealed in, on or about the motor vehicle; his request to search may reflect a belief that could be the situation, but reasonableness of his belief *per se* is not an issue on the merits of the charge, nor is it probative of the fact of knowing possession of a controlled substance. See *Vines v. State,* 479 S.W.2d 322, at 324 (Tex.Cr.App.1972). Therefore, testimony admitted for the purpose of showing grounds for suspicion and reasonableness of a request to search was not relevant to any disputed material issue at trial of this cause.

That is to say, such evidence has no tendency to make the existence of any fact that is of consequence to the determination of this criminal action more probable than it would be without the evidence. Tex.R. Cr.Evid.Rule 401. See and compare, e.g., *Johnson v. State,* supra, at 160 (that informant mentioned "a gun" not relevant when there was no contested issue regarding gun nor did it tend to make identity of killer more or less likely); *Franks v. State,* supra, 138 S.W.2d at 114 (testimony that uncle influenced accused to rob banker not relevant to any issue in trial for murder of banker). The court of appeals erroneously upheld admitting the testimony on that basis.

Thus I agree with the conclusion of the Court in that respect; we must now consider whether the error contributed to the verdict of guilty returned by the jury.[2]

Indeed, in every case where there is error in proceedings below the mandate of Tex.R.App.Pro.Rule 81(b)(2) is that the appellate court *shall* reverse the judgment unless the court determines "beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

The error here was committed prior to conviction, and the prosecution appropriated that inadmissible evidence to urge the jury to find appellants guilty, *viz:*

> "The purpose of final argument is to summarize the evidence.... so that you can come to a final decision whether you are satisfied in your mind that the State

---

**2.** Bearing on prejudicial nature of the error is further testimony by Trooper Williams upon being recalled by the State, presumably in rebuttal, as noted by the Amarillo Court of Appeals, *Valcarcel v. State,* supra, at 362, 371. After the prosecutor drew his attention to "some of these drug courier busts that [he] personally [had] made" and "specifically ... to those involving Cuban suspects traveling [west] on Interstate 40," before Trooper Frausto stopped appellants, Trooper Williams said he "made three large narcotics seizures" and "two of those three were of Cuban descent;" over objection Trooper Williams was permitted to testify in detail as to dates, weight of substances seized and, again, both were Cubans.

has proved that these Defendants, Mr. and Mrs. Valcarcel, are guilty beyond a reasonable doubt.

The first witness you heard was Trooper Williams, and one thing that he specifically stated in his testimony was that he was in no way involved in this case.

What he is involved in is developing these Drug Courier Profiles; he has taken a part, not just himself, but other law enforcement officers, not just in this state, but in other states, in developing these profiles.

The reason these are developed is because these are common characteristics that they have observed on many arrests of drug traffickers. They don't just come up with one or two common characteristics....

He listed some odd 17 characteristics that they look for when they are arresting when they want to—after they have stopped the Defendants."

Counsel then reiterated most of the characteristics listed by Trooper Williams, and proceeded to place testimony of Trooper Frausto in juxtaposition with each characteristic he claimed to have observed *vis a vis* appellants, summing up as follows:

"Now, folks, he noted almost 15 of 17 characteristics for *these folks*. Now, it's conceivable to me that a Cuban husband and wife could be traveling down the highway on vacation going to Las Vegas from Miami in a rented car in another person's name carrying this vial of cocaine without them being drug traffickers.

*But, isn't it coincidental that 15 out of 17 factors were noted with these folks. Fifteen."*

United States Courts of Appeals for the Fifth and Eleventh Circuits, the geographical boundaries of which embrace ports of entry at or near the southernmost borders of this country from Texas to Florida, are most experienced with "drug courier profiles," and they are uniform in believing that using them as evidence—even to es-

tablish reasonable suspicion—"should be viewed critically."[3] The Eleventh Circuit has found that "drug courier profile *testimony* is inherently prejudicial," "is nothing more than the opinion of those officers conducting an investigation," and, accordingly, has denounced "use of this type of evidence as substantive evidence of a defendant's innocence or guilt." *United States v. Hernandez–Cuartas*, 717 F.2d 552, at 555 (11th Cir.1983).

Here the major substantive evidence relied on by the State to support its indictment is testimony of the drug courier profile, that appellants matched it and how successfully first Trooper Williams and then Trooper Frausto utilized it.

In all those circumstances, one surely must harbor a reasonable doubt that the error made no contribution to the verdicts of the jury. See *Satterwhite v. Texas*, 486 U.S. ——, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988).

Therefore, I concur in the judgment of the Court to reverse the judgment as to conviction.

MILLER, J., joins this opinion.

McCORMICK, Judge, dissenting on Appellants' Petition for Discretionary Review.

Prior to his retirement, Judge John F. Onion prepared this dissent which I adopt as my opinion.

"The majority reverses these convictions on the basis of the testimony of the State's first witness at the trial on the merits, Officer Williams, as to a drug courier profile. The majority thus sustains a common ground for review of the appellants.

"Prior to the joint trial appellants filed motions to suppress the fruits of what they claimed was an illegal search. After a hearing on the said motions, in which Officer Williams testified, the motions were overruled and appellants thus preserved for review any error as to the legality of the search. Appellants entered pleas of

---

**3.** See cases cited and discussed in opinion of the Court at 2, n. 2; see also *State v. Brown*, 370

So.2d 547 (La.1979).

not guilty in their joint trial and the burden of proof was thus placed on the State. What ensued was a contested case.

"The first witness at the trial on the merits was Officer Williams, who testified as he had at the suppression hearing, as to the development of a drug courier profile. The only objections to his testimony were "irrelevant" and "prejudicial" and "inflammatory," normally general objections which preserved nothing for review. The arresting officer, Frausto, testified as to the stop of appellants' vehicle on the highway for speeding, the consent to search, the search and the discovery of the contraband. On direct examination Frausto did not testify as to a drug courier profile. On cross-examination appellants inquired as to his drug courier profile training, what factors of the profile were present in the instant case and which factors were not present. The case was submitted to the jury as a contested case. There were no stipulations that the stop was legal and the consent to search was valid.

"On appeal appellants claimed that Officer Williams' testimony was inadmissible because of 'bolstering.' All cases cited in their briefs in support of such contention related to 'bolstering.' Without observing that no objection on 'bolstering' was made at trial, the Court of Appeals rejected appellants' separate points of error finding that no bolstering occurred as there was no earlier testimony for Officer Williams' testimony to bolster.

"Completely abandoning the 'bolstering' contention, the appellants jointly advanced a distinct ground of review concerning Officer Williams' testimony which was not raised or passed upon by the Court of Appeals.[1] Apparently recognizing that appellants are not properly before this Court with the ground for review, the majority uses a cover or a smoke screen of discussing whether the Court of Appeals correctly

decided the bolstering contention although that contention is not involved in any ground for review nor briefed or relied upon by the appellants.

"Without discussing whether the error, if any, was properly preserved at the trial level, and ignoring that the basis of the ground for review was not raised or pushed on by the Court of Appeals, the majority reverses the convictions because of the admission of the testimony of the State's first witness, Officer Williams, concluding from the record as a whole (without mentioning the cross-examination) that the appellants had not challenged the stop or the consent to search.

"Whatever may be said about the order in which the State called its witnesses, given the circumstances of this case, I dissent to such action of the majority and to the reversal of these convictions for the reason given."

W.C. DAVIS, J., joins this dissent.

---

1. "The ground for review jointly urged by the appellants in separate briefs reads:
   The Court of Appeals has condoned, if not expressly approved of an unprecedented view of what can qualify as relevant material evidence. Is it now going to be the law that the State an "brainwash" and predispose a jury to

a guilty finding by use of extensive, repetitious testimony as to a nebulous, so-called "drug courier profile" (or just plain "guilty profile" as it occurred in this case) even though lawfulness of the arrest and search is never made an issue before the jury?' "