# NO. 12-19-00258-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LARRY COLEMAN HICKS,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A jury convicted Larry Coleman Hicks of assault on a public servant, enhanced to allege Appellant was a habitual offender. The jury assessed his punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division. Appellant presents seven issues on appeal. We affirm.

## BACKGROUND

Appellant met with Parole Officer Shella Coleman to discuss the conditions of his parole. Shortly thereafter, the parole office ordered that he wear an ankle monitor.

Karl Gentry testified that he was a parole officer on May 18, 2018. On that date, Gentry installed an ankle monitor on Appellant and a monitoring unit in his mother's home where Appellant lived. Gentry told Appellant to stay home over the weekend and to come into the parole office Monday morning, May 21.

Coleman sent Gentry back to Appellant's home on May 21, because Appellant had not reported as instructed, and the monitoring system indicated that someone tampered with the ankle monitor. He arrived at the house where Appellant was living at approximately 4:00 p.m. and parked in the driveway. He knocked on the door and received no response. He found no one in the backyard. He was about to leave when the garage door opened. Gentry stepped about

four feet into the garage. Just before entering the garage, Gentry thought he heard "hey" or "what do you want?" Gentry responded, "Parole Officer Gentry. I'm here to check my equipment." Appellant stood in the doorway of the house dressed in shorts and a t-shirt. Gentry then took a photo with his cell phone to document that Appellant was not wearing his ankle monitor as he was required to do. This apparently enraged Appellant who charged Gentry, cursing and howling, and swung and hit Gentry's wrist and hand that held the cell phone. Appellant then ran back into the house yelling, "Oh, oh, oh. I've got something for you."

Gentry testified that the blow caused pain to his wrist and hand that he described as a stinging, pulsing pain that lasted about an hour. Gentry returned to his vehicle, drove down the street and called 9-1-1 to summon assistance. When Gentry returned with other officers to Appellant's house, they found the monitor base unit smashed into pieces and lying in the driveway. Appellant refused to exit the house. A standoff ensued until a SWAT team armored vehicle knocked the front door open, and Appellant was taken into custody.

At the conclusion of trial, the jury found Appellant guilty of assault on a public servant and sentenced him to life in prison. This proceeding followed.

## SUFFICIENCY OF THE EVIDENCE

In this first issue, Appellant maintains that the evidence is insufficient to establish that he possessed the requisite intent required to commit the offense. In his second issue, Appellant contends the evidence is insufficient to establish that Parole Officer Gentry sustained bodily injury. We will address these two issues together.

### Standard of Review

An appellate court reviews a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*. 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). A challenge to the sufficiency of the evidence requires the reviewing court to consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 895. The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony, and the reconciliation of conflicts in the evidence. *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex. Crim. App. 1998). "When the record

2

supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative a direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* at 778; *Dansby v. State*, 530 S.W.3d 213, 226 (Tex. App.—Tyler 2017, pet. ref'd).

## Applicable Law

An actor commits an assault if he "intentionally, knowing, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2019). The Texas Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." *Id*. § 1.07(a)(8) (West Supp. 2019). The testimony of the victim that he or she suffered physical pain is legally sufficient to establish the element of "bodily injury." *See Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). When considering whether evidence is sufficient to establish that a victim suffered pain, juries may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life, using inferences that reasonably could be drawn from the evidence. *Wawrykow v. State*, 866 S.W.2d 87, 88-89 (Tex. App.—Beaumont 1993, pet. ref'd).

Intent is typically proven through circumstantial evidence and may be inferred from a defendant's words or conduct. *State v. Fuller*, 480 S.W.3d 812, 823 (Tex. App.—Texarkana 2015, pet. ref'd). Circumstantial evidence of an accused's mental state must be reviewed with the same scrutiny as other elements of an offense. *Laster*, 275 S.W.3d at 519-20. The statutory definition of "bodily injury" includes "even relatively minor physical contact if it constitutes more than offensive touching." *Id*. at 524. The jury may infer the existence of the culpable mental state from any acts tending to prove its existence, including the acts, words, and conduct of the accused, the method of committing the crime, and the wounds inflicted on the victims. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Dobbins v. State*, 228 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd).

The legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A "hypothetically correct" jury charge is "one that accurately sets out the

3

law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

There are three conduct elements which may be involved in any offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). A proper jury charge limits the definitions of the applicable culpable mental states to include only the language regarding the relevant conduct elements. In re I.L., 389 S.W.3d 445, 450 (Tex. App.—El Paso 2012, no pet.) Assault causing bodily injury is a result oriented offense. *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). Therefore, the definitions of the culpable mental states (intentionally, knowingly, or recklessly) should be limited to include the result of conduct element. *In Re I.L.*, 389 S.W.3d at 451. So limited the culpable mental states alleged should be defined as follows:

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur.

*Price*, 457 S.W.3d at 443.

## Discussion

The indictment charged that Appellant did intentionally, knowingly, and recklessly cause bodily injury to Gentry by striking him with his hand and that Appellant did then and there know that Gentry was a public servant lawfully discharging an official duty. Appellant acknowledges that he intentionally slapped the cell phone from Gentry's hand. But he argues that there was no evidence that he acted with the culpable mental state required for conviction. Common experience justified the jury's belief that Appellant knew that physical pain would naturally accompany a blow delivered with force sufficient to knock a cell phone from a grown man's hand. The jury was entitled to infer from the sudden and violent nature of the attack that Appellant knew that hitting Gentry's hand was reasonably certain to cause pain. The jury was also entitled to infer from Appellant's language and conduct that, although aware of the

substantial and unjustified risk of injury to Gentry, Appellant consciously disregarded it. The evidence is sufficient to support the jury's implicit finding of the culpable mental state alleged.

Appellant also insists there is no objective evidence that Gentry suffered pain as a result of the assault. Gentry did not seek medical attention after the assault. There was no evidence of visible injury to Gentry's hand or wrist. In reporting the assault to Deputy Steve Dunklin almost immediately thereafter, Gentry told Dunklin, "He hit my hand. That's assault on a public servant." Appellant argues that Gentry did not tell Deputy Dunklin that he felt pain.

Gentry testified at trial that he felt a "stinging, pulsing pain" in his wrist and hand "for about an hour" after the assault. Dunklin stated in his testimony that Gentry said he felt pain when Appellant struck him and that he included this fact in his report. Gentry's trial testimony regarding the pain inflicted by Appellant's blow is sufficient, in itself, to establish the element of bodily injury. *See Laster*, 275 S.W.3d at 524.

Viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient to prove Appellant's culpable mental state and Gentry's injury. Appellant's first two issues are overruled.

### ADMISSION OF EVIDENCE

In issue three, Appellant complains that the trial court abused its discretion in admitting testimony that officers found a gun in Appellant's mother's bedroom after he was arrested. Prior to testimony, the State informed the court that it intended to offer testimony that the officers found a pistol in the house where Appellant lived. Out of the presence of the jury, the court overruled Appellant's objections that evidence of the pistol was not relevant to the charged offense and was unduly prejudicial.

Deputy Dunklin subsequently testified that when officers entered the home after the end of the standoff and after Appellant's arrest, they found a nine shot .22 caliber revolver on top of a chest of drawers in the bedroom of his mother, who owned the home. No evidence linked the gun to Appellant. Appellant argues this testimony constituted evidence of an extraneous offense with no proof that he committed the offense. Appellant also maintains that evidence of the pistol's presence was unrelated to any issue in the case.

**Standard of Review**

An appellate court reviews the trial court's decision to admit or exclude evidence for abuse of discretion. *See Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). An abuse of discretion in the admission of evidence occurs when the decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

**Applicable Law**

In a case where the court has overruled an objection to evidence, the ruling usually will not be reversible error when the same evidence is subsequently admitted without objection. *See Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996). However, an exception to this rule is that the harmful effect of improperly admitted evidence is not cured by the fact that the defendant sought to meet, destroy or explain it by introducing rebutting evidence. *Leday v. State*, 983 S.W.2d 713, 718-19 (Tex. Crim. App. 1998). Testimony elicited during cross-examination may come within the exception. *Valcarcel v. State*, 765 S.W.2d 412, 418 (Tex. Crim. App. 1989).

Evidence of an extraneous offense "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). An extraneous offense is not admissible unless the State clearly proves the defendant committed it, that it is relevant to a material issue, and that its probative value is not substantially outweighed by its prejudicial effect. *Wyle v. State*, 777 S.W.2d 709, 715 (Tex. Crim. App. 1989). A defendant may respond to evidence of an extraneous offense admitted over objection. *Leday*, 983 S.W.2d at 718 n.9.

An adverse ruling on a pretrial motion to suppress evidence will ordinarily suffice to preserve error on appeal, and a defendant need not specifically object to the evidence when it is later offered at trial. *Thomas v. State,* 408 S.W.3d 877, 881 (Tex. Crim. App. 2013). An affirmative statement of "no objection" will ordinarily constitute a waiver of the right to raise on appeal the error that was previously preserved. *Id*. at 881-82. The court of criminal appeals has stated that the application of this rule is context dependent.

> By that we mean that an appellate court should not focus exclusively on the statement itself, in isolation, but should consider it in the context of the entirety of the record. If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier

preserved for appeal, then the appellate court should not regard the claim as "waived," but should resolve it on the merits. On the other hand, if from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the "no objection" statement to be a waiver of the earlier-preserved error. Under the latter circumstances, the affirmative "no objection" statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood.

*Id.* at 885-86.

**Discussion**

The State does not respond to Appellant's arguments attacking the trial judge's ruling admitting the challenged evidence. The State contends that, after the trial court's ruling, Appellant waived or abandoned his claim of error for purposes of appeal. The State cites multiple instances during trial which it claims indicate Appellant's abandonment of his objection to the pistol evidence. Appellant did not object to the State's mention of the pistol during its opening statement. Appellant, in his opening statement, mentioned "there was a gun." When the State offered pictures in which the pistol was shown, Appellant stated, "No objection to the offer." Appellant did not object to a witness discussing what was depicted in the photographs of the pistol. He did not object to a patrol sergeant's testimony concerning a ".22 firearm" possibly being in Appellant's house, and the danger it could pose to officers. Appellant cross examined the same witness about "the gun being in the house." When questioning Investigator Ron Rathbun, defense counsel elicited testimony about the ".22 caliber handgun." During closing arguments, Appellant did not object to the prosecutor's mention of the threat of gunfire.

Appellant insists that because he objected and obtained an adverse ruling outside the presence of the jury, he did not have to reiterate his objection before the jury at every mention of the pistol during the opening statements, the testimony, or final arguments. Appellant insists that his counsel did not intend to abandon the objection when he said, "No objection to the offer" when the State offered pictures with the pistol in the background. Appellant argues that his counsel must have failed to see the pistol in the pictures when he stated that he had no objection. Appellant argues he did not abandon the claim of error, because there was "no sound strategic reason" to do so.

The pistol was found in the bedroom of Appellant's mother. She owned the house. There was no evidence linking the pistol to Appellant. An extraneous offense is inadmissible unless the Sate proves beyond a reasonable doubt that the defendant committed it. *Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994). Further, the presence of the gun in his

mother's bedroom was unrelated to proof of any element of the charged offense. Since evidence of the extraneous offense was not relevant to the issues in the case, it had no probative value. Therefore, it is clear that the danger of unfair prejudice of the pistol evidence substantially outweighed its negligible probative value. *See* TEX. R. EVID. 403. We conclude that the trial court erred in overruling Appellant's objection to the evidence of the pistol.

Although not defending the lower court's ruling, the State argues that Appellant's later statement of "no objection" forfeited the earlier preserved error.

Even if we assume error was preserved and not waived or abandoned, it is still subject to a harmless error review. The improper admission of an extraneous offense is non constitutional error and must be disregarded under Texas Rule of Appellate Procedure 44.2(b) unless it affected the defendant's substantial rights. A substantial right is affected where the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury, or had but a slight affect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). To assess the likelihood that the error adversely affected the jury's decision, we consider the entire record. *Id*. The reviewing court must consider the character of the alleged error, and how it might be considered with other evidence, the extent the error was emphasized by the State, and the weight a juror would likely place on the error. *Id.* at 355-56. Evidence of guilt is a factor in any thorough harm analysis. *Id.* at 358. If the error was of the magnitude to prejudice the jury's evaluation of the evidence, the conviction is tainted despite overwhelming evidence of the defendant's guilt. *Harris v. State*, 790 S.W.2d 568, 588 (Tex. Crim. App. 1989).

There is nothing in the record showing Appellant ever had the pistol in his possession. The Sheriff's deputies were not aware of the pistol in the house until Appellant's sister asked her mother if there was a gun in the house. The mother, who was not in the house during the standoff, said the pistol was on the highboy. That is where the officers found it when they finally entered the house. However, the prosecution repeatedly alluded to the danger presented by the pistol.

The pistol evidence could have had little influence on the jury's determination that Gentry was a parole officer or that he felt pain when Appellant struck his wrist and hand. Extraneous offense evidence tends to show that the defendant is a bad person generally.

Therefore, it may improperly contribute to the severity of punishment imposed. In this case, Appellant had seven felony convictions. He had violated previous probations and absconded when placed on parole. When this assault occurred, he was on parole from serving a previous sentence for assault on a public servant. The standoff Appellant caused did not end until a SWAT team used an armored vehicle to breach the front door of his mother's house.

Having considered the entire record, we conclude that the error did not influence the jury's decision on Appellant's conviction or punishment, or had but slight effect. Appellant's third issue is overruled.

### EXCLUSION OF EVIDENCE

In his fourth issue, Appellant contends the trial court abused its discretion in excluding testimony that the Parole Board fired Gentry for misconduct involving a parolee under his supervision.

Prior to trial, the State filed a motion in limine to prevent Appellant from introducing evidence that Gentry had engaged in inappropriate conduct as a parole officer. On August 9, 2018, a parolee complained that Gentry attempted to establish an inappropriate relationship with her between October 2016 and December 2017. The Office of the Inspector General, after conducting an investigation, concluded that Gentry "did engage in an improper employee/offender relationship" by giving a video game to the parolee's children. Shortly thereafter, Gentry was no longer employed as a parole officer.

During trial, without objection, the State elicited testimony from Gentry that he had testified before Appellant's parole hearing in August 2018 that he felt pain when Appellant struck him. This statement was consistent with his earlier testimony in this case. On cross examination, Appellant contended to the trial court that the State's introduction of a specific prior consistent statement permitted the defense to introduce specific prior acts of the witness reflecting on his credibility.

On appeal, Appellant contends the trial court erred in excluding the evidence showing motive or bias, because it showed "Gentry had a motive to be a complainant in a criminal case, because he knew that a [former] female parolee was lurking in the shadows who could (and did) cost him his job." Appellant also argues on appeal that the trial court should have admitted the

evidence to correct the false impression that Gentry was a parole officer in good standing at the time of trial.

At trial, Appellant sought to introduce evidence of Gentry's past conduct in order to attack his general character for truthfulness. The trial court sustained the State's objection that it was (1) an irrelevant collateral matter, and (2) it was barred by Texas Rule of Evidence 608(b) as an inquiry into a specific instance of the witness's conduct to attack his character for truthfulness.

The grounds for the admission of the OIG report argued on appeal do not comport with those presented to the trial court and no error was preserved. *See Guevara v. State*, 97 S.W.3d 579, 583 (Tex. Crim. App. 2003). Moreover, only the most improbable reasoning supports Appellant's argument that the Inspector General's report would have exposed bias or motive. There was no evidence at trial that Gentry was presently a parole officer. If Appellant wanted the jury to know that Gentry was no longer a parole officer, he needed only to have asked him on cross examination.

Appellant's forth issue is overruled.


### FAILURE TO INSTRUCT JURY ON LESSER INCLUDED OFFENSE

In his fifth issue, Appellant contends the trial court erred in failing to submit to the jury an instruction on Class A assault.

### Standard of Review and Applicable Law

A trial court's denial of a lesser included offense instruction is reviewed for abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). When determining whether the trial court properly refused a request for a lesser included offense instruction, the appellate court reviews all of the evidence presented at trial. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993).

Upon the defendant's request, the trial court must include a lesser included offense instruction in the jury charge when (1) the requested charge is for a lesser included offense of the charged offense, and (2) there is some evidence that, if the defendant is guilty, he is guilty of only the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). To entitle the defendant to a lesser included offense instruction, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some

evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." ***Sweed v. State***, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (quoting ***Skinner v. State***, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), *cert. denied*, 523 U.S. 1079, 118 S. Ct. 1526, 140 L. Ed. 2d 677 (1998)). More than a scintilla of evidence requires the submission of a lesser included offense instruction. ***Id***. A defendant charged with assault on a public servant is entitled to an instruction on Class A misdemeanor assault if evidence from any source raises a fact question as to whether he knew the complainant was a public servant. *See* ***Drew v. State***, 735 S.W.2d 655, 657-58 (Tex. App.—Austin 1987, pet. ref'd).

**Discussion**

Appellant interprets the evidence as raising a fact question as to whether he knew that Gentry was a parole officer at the time of their encounter in the garage. He argues that the jury could have concluded that Gentry did not tell him he was a parole officer when Gentry installed the ankle monitor on May 18. He also contends that the jury could also have determined that, when Gentry returned three days later, Gentry did not identify himself as a parole officer, or, if he did, Appellant did not hear him or did not believe him because of his appearance.

There was no evidence offered at trial that Appellant was unaware that Gentry was a parole officer when he placed the monitor on Appellant's leg. There is no evidence that when Gentry returned three days later, he did not announce, "Parole Officer Gentry. I'm here to check my equipment."

The conclusions argued for by Appellant would depend solely on the jury's disbelief in the trial evidence. This is insufficient. There must be some evidence "directly germane" to the lesser included offense that would warrant an instruction. ***Sweed***, 351 S.W.3d at 68. There is no such evidence in the record.

Appellant's fifth issue is overruled.

<span style="font-variant:small-caps"><b>Cumulative Error</b></span>

In his sixth issue, Appellant maintains the cumulative effect of the trial court's errors denied him a fair trial.

## Applicable Law

A number of errors may be found harmful in their cumulative effect even if each error, considered separately, would be harmless. *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013); *see also* *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). "A string of harmless errors does not arithmetically create reversible, cumulative error." *Linney*, 413 S.W.3d at 767 (Cochran, J., concurring in refusal of pet.). Instead the court looks for multiple errors that acting together achieve "the critical mass necessary to cast a shadow on the integrity of the verdict." *Id*.

## Discussion

We have determined that the trial court erred only in admitting evidence of the pistol in Appellant's mother's house, an error which we determined is harmless. We have found no other errors to cumulate with the sole error found. Nonerrors may not in their cumulative effect cause error. *See* *Chamberlain*, 998 S.W.2d at 238.

Appellant's sixth issue is overruled.

## CRUEL AND UNUSUAL PUNISHMENT

In his seventh issue, Appellant contends that the life sentence imposed on him as a habitual offender constitutes cruel and unusual punishment in violation of the Eighth Amendment. Appellant argues that, viewed in the light most favorable to the verdict, the record shows that he did no more than slap a cell phone out of a public servant's hand, causing transient pain but leaving no visible injury and requiring no medical attention. Therefore, in Appellant's view, the life sentence imposed is grossly disproportionate to the offense.

The State contends that since Appellant raised no objection in the trial court, he has waived the issue on appeal. The State also argues that, even absent waiver, Appellant's Eighth Amendment claim is meritless.

## Applicable Law

The Eighth Amendment forbids sentences that are grossly disproportionate to the crime for which the defendant has been convicted. U.S. CONST. amend. VIII; *see also* *Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983). Factors that may be used in determining the proportionality of a sentence are (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the

sentences imposed for the same crime in other jurisdictions. ***Solem*** 463 U.S. at 292, 103 S. Ct. at 3011. However, if the threshold comparison of the gravity of the offense against the severity of the sentence shows that the sentence is not grossly disproportionate, the reviewing court need not consider the last two factors of the ***Solem*** test. ***McGruder v. Puckett***, 954 F.2d 313, 316 (5th Cir. 1992). The severity of the sentence imposed on a habitual offender should not be compared with the seriousness of the most recent offense, as it stands alone, but in light of the offender's prior offenses. ***Id***.

Without an objection in the trial court raising the issue of cruel and unusual punishment, the issue is waived on appeal. *See* ***Rhoades v. State***, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver with regard to rights under the Texas Constitution); ***Curry v. State***, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (waiver with regard to rights under United States Constitution); ***Robertson v. State***, 245 S.W.3d 545, 549 (Tex. App.—Tyler 2007, pet. ref'd).

## Discussion

Appellant argues that an Eighth Amendment claim that the sentence is disproportionate to the crime committed should be cognizable on appeal despite the absence of an objection at trial, "because it does not become ripe until the jury returns a verdict, at which time an objection would be futile because the trial court cannot correct the error." Appellant insists that freedom from cruel and unusual punishment is a right "so fundamental to the proper functioning of our adjudicatory process" that it should not be considered forfeited on appeal unless the record reflects that it has been "plainly, freely, and intelligently" waived at trial. In ***Proenza v. State***, 541 S.W.3d 786 (Tex. Crim. App. 2017), the court of criminal appeals held that the right to be tried in a proceeding devoid of improper judicial commentary is a right that will not be considered waived on appeal unless the record clearly reflects that the appellant "plainly, freely, and intelligently" waived that right at trial. ***Id***. at 801. Appellant maintains that in light of ***Proenza***, the court of criminal appeals is unlikely to require a trial objection to preserve an Eighth Amendment claim on appeal.

Even if we assume that no trial objection was required to preserve error, Appellant still cannot prevail. In this case, Appellant was convicted of assaulting a public servant for the second time. He had accumulated six other felony convictions. He had violated the conditions of the several probated sentences he had received. When granted parole, he absconded. His last arrest came after a protracted standoff only ended by the use of the SWAT team's specially

13

modified armored personnel carrier. In determining whether Appellant's sentence is unconstitutionally disproportionate, Appellant's record must be considered in light of the defendant's record as a habitual offender and the Supreme Court's holding in *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). Rummel received a mandatory life sentence under a prior version of the Texas habitual offender statute for three nonviolent property crimes where the total amount taken in all three crimes amounted to just under $230. 445 U.S. at 265-66, 100 S. Ct. at 1135. The Supreme Court held that the mandatory life sentence imposed on Rummel did not constitute cruel and unusual punishment. 445 U.S. at 285, 100 S. Ct. at 1145. In light of *Rummel*, Appellant's sentence is not unconstitutionally disproportionate. Absent a threshold showing of disproportionality, we need not apply the second and third *Solem* elements.

Appellant's seventh issue is overruled.


## DISPOSITION

The judgment of the trial court is *affirmed*.


### BILL BASS
Justice


Opinion delivered September 9, 2020.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*


(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 9, 2020**

**NO. 12-19-00258-CR**

**LARRY COLEMAN HICKS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 114-0976-18)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*